NO. 07-09-0144-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

DECEMBER 17, 2009
_____

DAVID O. MEEKINS,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE COUNTY COURT AT LAW NO. 2 OF LUBBOCK COUNTY;

NO. 2007-443160; HON. DRUE FARMER, PRESIDING
_____

***Opinion***
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

David O. Meekins pled guilty to and was convicted of possessing two or less ounces of marijuana after the trial court denied his motion to suppress. Whether the trial court acted properly in so acting is now before us. Meekins believes that the motion should have been granted because 1) the arresting officer unreasonably prolonged his detention, and 2) his consent to search his vehicle was neither positive or unequivocal. We reverse the judgment.

*Background*

On January 12, 2007, at approximately 11:00 p.m., Officer Tony Williams observed appellant and his companion depart from a house purportedly known for drug activity. When they arrived at the house, how long they stayed, and their reason for being there were unknown to the officer, and are unknown to us. Nonetheless, upon seeing them leave the abode and walk to a vehicle parked down the block, the officer and his recruit decided to follow them.

After driving away, appellant made a turn without signaling. This resulted in the initiation of a traffic stop and the officers approaching the vehicle. According to Williams, both of the vehicle's occupants appeared nervous. This conclusion was derived from appellant moving around in his seat while the passenger remained still. Nonetheless, Williams acquired appellant's driver's license, checked it for outstanding warrants, and returned to the vehicle. Nothing of record discloses whether appellant was the subject of any arrest warrant. Nor does the record illustrate what information, if any, the officer obtained as a result of running appellant's license. Yet, it is clear that upon returning to appellant's car, he solicited consent to search it. That solicitation continued over a period of about a minute and included approximately six requests. The officer asked that many times because appellant would not commit one way or the other. Indeed, captured on the video of the event was the officer informing appellant that he was being asked a "yes or no" question. Furthermore, the last request propounded to appellant consisted of Williams asking: "Do you mind if I look?" To it, appellant answered "yes," according to the officer. Upon so replying, appellant was ordered to exit the car.

As he left the vehicle, appellant appeared to place a hand in his pocket. This resulted in Williams grabbing appellant's hand and asking permission to search the content of his pocket. Therein was found the marijuana for which appellant was prosecuted.

*Law*

The applicable standard of review is discussed in *Ford v. State,* 158 S.W.3d 488 (Tex. Crim. App. 2005). It requires us to give great deference to the trial court's interpretation of historical fact and assessment of a witness' credibility. *Id.* at 493. However, we need not give such deference to its application of the law to the facts, especially when those facts are undisputed. *Neal v. State,* 256 S.W.3d 264, 281 (Tex. Crim. App. 2008). In the latter situation, we consider the matter *de novo. Id.*

Next, no one contests the validity of the initial detention. Simply put, Williams had the authority to stop appellant when he witnessed the traffic violation. *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996) . No one denies that the directive to exit the car was tantamount to a continuation of the detention. Nor does anyone dispute that the officer's directive to exit arose from what he believed to be appellant's consent to search. Similarly absent is any dispute regarding whether justification for, or the purpose of, the initial stop had ended by the time the officer sought consent to search the vehicle. *See Kothe v. State,*152 S.W.3d 54, 63-64 (Tex. Crim. App. 2004) (stating that in a routine traffic stop, police officers may request certain information from a driver, such as a driver's license and car registration, and may conduct a computer check on that information, but after this computer check is completed, and the officer knows that this driver has a currently valid license, no outstanding warrants, and the car is not stolen, the traffic-stop investigation is fully resolved and the detention must end). Rather,

3

the controversy before us involves whether appellant consented to the search, and that is the question we address here.

When relying upon consent to justify the lawfulness of a search, the State must prove by clear and convincing evidence that the consent was freely and voluntarily given. *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968); *Johnson v. State*, 226 S.W.3d 439, 443 (Tex. Crim. App. 2007)*; Brown v. State*, 212 S.W.3d 851, 869 (Tex. App.–Houston [1ˢᵗ Dist.] 2006, pet. ref'd). In meeting the burden, it must also show that the consent was positive and unequivocal. *Meeks v. State*, 692 S.W.2d 504, 509 (Tex. Crim. App. 1985); *Brown v. State*, 212 S.W.3d at 869. Incidentally, consent is not of that ilk if it amounts to no more than acquiescence to a claim of lawful authority. *Brown v. State*, 212 S.W.3d at 869. Finally, the existence of legitimate consent is a question of fact to be determined from the totality of circumstances appearing of record, and, unless the trial court abuses its discretion, its decision must be affirmed. *Johnson v. State*, 226 S.W.3d at 443 (holding that the applicable standard of review is one of abused discretion).

*Application of Law*

As previously described, the video of the stop revealed that Williams asked for consent about six times. Appellant's first five replies to those solicitations were evasive and so much so that they resulted in the officer informing him that the inquiry was a "yes or no question." The officer's desire to hear a "yes" or "no" answer continued until appellant said "yes" or "I guess" to the last solicitation. Because that utterance allegedly evinced to Williams "clear and unequivocal" consent, he ordered appellant to exit the vehicle. The

4

problem comes, however, in the nature of the question to which appellant said "yes" or "I guess."

The officer had not asked "may I search" but rather "would you mind if I look?" Answering "yes" to the latter meant that appellant did mind. Answering "I guess" also had and has like connotation; that is, saying "I guess" in response to being asked if one minds whether something happens can well indicate that he does. To this we add appellant's prior evasiveness in response to the officer's persistence in asking for consent. When combined, the circumstances paint not a picture of clarity or unequivocation but rather one of vacillation and hesitance. More importantly, to somehow conclude from the entirety of the scenario that saying "yes" or "I guess" meant that appellant finally acquiesced to the search invites speculation into various matters. Those matters consist of whether appellant failed to listen to the specific question asked by Williams, whether he ignored the last question and opted to answer those previously propounded, or whether he reinterpreted the question from one asking "would you mind" to one asking "may I search." Yet, authority denies both this court and the initial factfinder from engaging in speculation given the absence of supporting evidence.

Simply put, the situation before us is not one in which the historical facts are in dispute, for they are not. They were put to rest by both the video and Williams' confirmation of what appeared on the video. What was said and done was said and done, neither can be questioned nor changed. Thus, we merely are left with applying the undisputed facts to the law regarding consent, and that is a task undertaken *de novo.* And, upon undertaking that task, we hold, as a matter of law, the State failed to clearly and

convincingly prove that appellant granted the officer positive, unequivocal, and voluntary consent to search his car.[1]

Despite our conclusion that the issue before us involved consent, there is some allusion in the State's brief regarding whether the officer had reasonable suspicion to believe appellant engaged in some drug crime. The State's appellate counsel tended to downplay that proposition during oral argument but to the extent the matter was not conceded, we will address it briefly. First, we know of no authority holding that simply seeing someone leave a "narcotics house" at 11 p.m. and enter a car parked down the block gives rise to reasonable suspicion to believe that criminal activity is afoot. Nor did we find any. Indeed, it appears that the opposite is true for being in an area known for its high crime at night does not alone permit an officer to detain the traveler. *See e.g. Klare v. State,* 76 S.W.3d 68, 73-74 (Tex. App.–Houston [14th Dist.] 2002, pet. ref'd)*.*

Furthermore, Williams having characterized appellant's conduct as akin to "almost like they were trying to sneak down the block" is of no moment. This is so since establishing reasonable suspicion required the presentation of articulable "facts." *Scott v. State,* 549 S.W.2d 170, 172 (Tex. Crim. App. 1978). Labeling the conduct of appellant and his colleague as sneaky or sneaking is an opinion founded on fact, but in so opining the officer failed to disclose the facts which permitted him to reasonably develop the opinion. So, the officer's opinion had no probative value in the overall equation. As repeatedly uttered by Sargent Joe Friday, "just the facts please . . . just the facts."

---

[1]In so concluding, we leave for another day answers to questions such as 1) whether a detainee must respond "yes" or "no" to a request to search, 2) whether an officer may require a detainee to respond at all, 3) whether a detainee's reluctance to say yes or directly respond to an officer's solicitation equates to a refusal to consent, and 4) whether an officer may continue a temporary detention until the detainee responds to a request to search in an acceptable manner.

That the officer also characterized appellant's parking down the block as suspicious is also of little value. This is so because he thought that one engaging in innocent conduct would have parked in the empty driveway given the inclement weather. Yet, defense counsel had him admit that he did not know when appellant arrived at the house, did not see him enter it, did not know how long he remained in the house, and did not know whether the driveway was empty when appellant arrived. Indeed, the officer also concluded that he was merely "speculating."

As for the allegation that the location from which appellant exited was a "narcotics house," Williams based that upon 1) a "sheet" that the narcotic's department "put's [sic] out every six months, sometimes longer" and 2) his having "worked the house before" and "worked with officers at that house . . . [who] made narcotics arrests . . . from that house." But, the record contains no evidence illustrating when the house was "worked" or when the arrests were made. Both events could have happened days, weeks, months, or years earlier. Nor does the record disclose either when the narcotics department issued the "sheet" used by Williams or when he actually acquired it. Thus, the information in it could well have been stale especially since it was disbursed every six months or "sometimes longer." We see no reason why the timeliness of the data on which the police rely should be of less importance in the reasonable suspicion equation than it is when determining the existence of probable cause for purposes of securing a search warrant. S*ee e.g. Blake v. State,* 125 S.W.3d 717, 725 (Tex. App.–Houston [1ˢᵗ Dist.] 2003, no pet.) (noting the timeliness of the information as a factor to consider when issuing a warrant). Time has the effect of making the information stale in both situations. So, without our knowing the age

of the "facts" underlying the observation that the abode was a "narcotics house," the label is of little help.

Finally, we address the observation that further detention was also permissible because appellant and his passenger appeared nervous. Again, Williams so testified. He also disclosed the facts upon which he derived that opinion. They consisted of appellant moving around while his passenger remained still. Though nervousness can be a relevant indicia, *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000) (so holding), that is not necessarily true here. This is so because of the "Catch 22" nature of the conduct being observed. Irrespective of whether those in the car sat still or moved around, either mode of conduct depicted nervousness according to the officer. As Mrs. Quinn once said years ago, "you can't have it both ways." While we do not want to nullify the probative value an officer may place on the indicia of nervousness, it is rather common, and natural, for most everyone to exhibit it when stopped by police officers. This may be due to some respect accorded them or the realization that they have power and authority beyond that available to an ordinary citizen, but whatever the reason, detention at the hands of law enforcement personnel often instills a bit of dread even in the hearts of the innocent. This, coupled with the possibility that most any conduct now can be deemed nervous, tends to discredit the value of the factor. And, as the indicia appeared here, we hesitate to engage in the speculation needed to view contrasting or opposite conduct as indicative of the same thing without any explanation as to why that is.

In sum, the record before us does not permit one to objectively conclude that appellant's leaving the "narcotics house" and appearing nervous provided Officer Williams with reasonable suspicion to detain appellant. So, that cannot be a basis for justifying

8

detention once the purpose for the original stop (*i.e.* investigating the traffic violation) ended.

*Dissent*

Concerning the dissent of Justice Campbell, we respectfully say the following. First, it is clear that an officer may ask one for permission to search a vehicle after the purpose of the initial stop ends. *Strauss v. State*, 121 S.W.3d 486, 491 (Tex. App.–Amarillo 2003, pet. ref'd). Yet, we have not found authority permitting law enforcement personnel to hold the detainee until the latter gives consent to search. Again, the justification for continuing the detention is gone and any further delay must necessarily be consensual. A police officer directing the person to answer his question is hardly a consensual exchange.

Second, while an officer may be able to ask a detainee to step out of the vehicle, *id.*, the dissent cites no authority permitting such request *once the reason for the stop has ended*, which includes the two cases cited by the dissent. That may be because our Court of Criminal Appeals has held that once that point has been reached, the suspect must be released. *Kothe v. State*, 152 S.W.3d at 63-64. Asking someone who has failed to grant consent to search to exit the car or repeatedly soliciting consent is nothing more than doing that prohibited in *Kothe*. Once the basis for a stop no longer exists and the detainee has not consented to a search, he must be released unless there exists other circumstances evincing probable cause or reasonable suspicion to continue the detention.

Nor do we find succor in the dissent's suggestion that discovery of the contraband was lawful merely because appellant consented to the search of his pocket. By that time, the initial justification for the stop had ceased. By that time, appellant had already been subjected to repeated requests for leave to search by one officer while another armed

9

officer stood nearby. By that time, appellant had illustrated his reluctance if not refusal to permit a consensual search. By that time, he had been ordered to exit the car by an officer who lacked unequivocal permission to search. By that time, one could reasonably interpret the officers' conduct as indicative of their intent to continue the detention until appellant answered in an acceptable way. But, by that time, only seconds had passed between the pressure being applied by the officer, the latter's unfounded order to get out of the car, and appellant's "consent" to search the pocket. These circumstances negate the existence of opportunity for reflective thinking necessary for there to be any attenuation between the officer's improper conduct and his receipt of consent to search the pocket. And, without satisfying the prerequisite of attenuation, appellant's consent is not voluntary. *Stone v. State*, 279 S.W.3d 688, 693 (Tex. App.–Amarillo 2006, pet. ref'd) (holding that consent may be valid after an unlawful stop if there is sufficient attenuation between the stop and consent). This latter observation also negates the dissent's suggestion that we found the search of appellant's pocket to be consensual.

Accordingly, the judgment is reversed, and the cause is remanded to the trial court.


Brian Quinn
Chief Justice


Campbell, J., dissents.

Publish.

10