

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0261-10

**DAVID O. MEEKINS, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SEVENTH COURT OF APPEALS
### LUBBOCK COUNTY

COCHRAN, J., delivered the opinion of the Court in which KELLER, P.J. and WOMACK, JOHNSON, KEASLER, and HERVEY, JJ., joined. KELLER, P.J. and JOHNSON, J., filed concurring opinions. MEYERS, J., filed a dissenting opinion in which PRICE, J., joined.

O P I N I O N

An officer stopped appellant's car for a traffic offense and, during that stop, asked if he could search the car. The officer said that appellant consented. During a consensual search of appellant's pocket, the officer found a pill bottle containing marijuana. Appellant filed a motion to suppress that evidence, arguing that he did not voluntarily consent to the

search of his car and therefore his constitutional rights were violated.[1]  After a hearing, the

trial judge denied the motion.  Appellant pled guilty to possession of marijuana and appealed

the trial judge's ruling.  The court of appeals reversed the trial judge, holding that the State

failed to carry its burden of proving consent by clear and convincing evidence.[2]  We granted

the State's petition for discretionary review[3] and hold that the trial judge's ruling that

appellant consented to the search of his car is supported by the record.  We therefore reverse

the court of appeals.

I.

## A.    Background

One January night, Officer Tony Williams and his recruit, Officer Matt Barber, were

patrolling a residential neighborhood just south of the Texas Tech University campus.  The

---

[1] U.S. CONST. amend. IV.; TEX. CONST. art. 1, § 9.

[2] *Meekins v. State*, 303 S.W.3d 25 (Tex. App.–Amarillo 2010).

[3]  The State's three grounds for review are as follows:
1.    Must consent be evaluated only from selected words spoken in the consent-request exchange, taken in isolation, or must the reasonable inferences and implications arising from the totality of the circumstances surrounding that exchange be considered?
2.    When the totality of the facts and circumstances shows the officer's belief that he received consent to search is objectively reasonable, may a reviewing court reverse a trial court's ruling in accord with that belief, employing a *de novo* review focusing only on one question and answer during the entire exchange?
3.    Even if appellant's consent to search his car was ambiguous or even invalid, did appellant's subsequent actions in reaching for his pocket (where the marijuana was hidden), and in granting independent consent to search his pocket, attenuate any taint from the prior actions?
Because we resolve this case based on the validity of consent, we need not address the State's third ground for review and therefore dismiss it.

narcotics unit of the Lubbock Police Department suspected that a house near the intersection of 23rd and University was an active distribution center for marijuana, so Officer Williams decided to conduct surveillance on it from across the street. He had done so before and made several previous narcotics arrests of people leaving the house. Shortly after they began watching the house, appellant and another man came out of the front door and began "a pretty long walk" down the street to a car. This was a particularly cold night, and Officer Williams–his suspicions already piqued–thought it odd that appellant would park so far from the house when there were several much closer parking spots.

The officers decided to follow as appellant began to drive away. When appellant failed to signal a left turn at the end of the block, the officers made a traffic stop. The mobile video recorder (dash cam) activated immediately after the officers got out of their squad car, and the audio recorder started as Officer Williams began speaking to appellant through the driver's side window.

Appellant gave the officers his driver's license and proof of insurance; Officer Barber ran a warrant check; and Officer Williams stood watch over the two men in the car. Officer Williams thought appellant was acting very nervous: "He was looking around the vehicle a lot. He wasn't giving me direct answers. He wasn't really talking to me at all. He didn't want to look at me." Even his voice sounded nervous. It was this nervousness, coupled with having seen appellant leave a suspected drug house, that led Officer Williams to ask for appellant's consent to search his car.

That conversation went as follows:[4]

Officer Williams: You don't have anything illegal in the vehicle, no weapons or anything like that?

Appellant: No.

Officer Williams: You don't mind if we take a look?

Appellant: (Inaudible.) Look in the car or what?

Officer Williams: Yeah.

Appellant: I don't have anything.

Officer Williams: Okay. You don't mind if I look? It's yes or no, bud.

Appellant: What do you think?

Officer Williams: What do I think?

Appellant: Yeah.

Officer Williams: I'm asking you if I can look in the car.

Appellant: (Inaudible.)

Officer Williams: Don't reach around, bud, just in case you got a gun.

Appellant: I ain't got no gun or nothing.

Officer Williams: Okay. You don't mind if we look?

Appellant: I just – (Inaudible.)  That's it (Inaudible.)

Officer Williams: Okay.

---

[4] We quote the conversation from a transcript written by the court reporter from the dash cam's DVD.  The DVD was entered into evidence, but the transcript was not, although it was included in the record on appeal.

Appellant: (Inaudible.)

Officer Williams: I'm asking if I can look in your vehicle.  It's yes or no.

Appellant: (Inaudible.)

Officer Williams: Is there anything else you might have?  You seem a little nervous, you know what I'm saying?  You're making me nervous.

Appellant: Naw, I ain't nervous.

Officer Williams: Okay. Do you have anything illegal in your vehicle?

Appellant: No.

Officer Williams: Okay. Do you mind if I look?

Appellant: I guess.[5]

During this thirty-second conversation, Officer Williams asked appellant for his consent to search the car six times.  After understanding appellant to consent, Officer Williams asked him to get out of his car so that he could do a pat-down search.  Once appellant stepped out, "the first thing he did was reach into his pocket,"[6] a move that alarmed the officer and prompted him to grab appellant's arm and restrain him against the vehicle. Officer Williams asked appellant if he could search his pocket, and, when appellant said "Yes," the officer found a pill bottle containing marijuana in the pocket.  Appellant was then arrested.  In total, the traffic stop lasted approximately nine minutes.

---

[5] Officer Williams testified that appellant said "Yes," not "I guess."  At least it sounded like "Yes" to him, both during the stop and when he listened to the DVD recording in court.

[6] When Officer Williams asked what he was reaching for in his pocket, appellant responded, "I'm trying to put my wallet back."

Appellant filed a motion to suppress, and the trial judge held a hearing on that motion. Officer Williams was the only witness. Appellant argued that Officer Williams's request to search appellant's car was not made in good faith because "it was his intention to search that car regardless of what happened that night." Appellant further asserted that his alleged consent was obtained only by coercion as demonstrated by the officer's tone, manner, and "rapid-fire" requests to search, as well as appellant's equivocal response of "I guess."

The trial court denied appellant's motion and agreed with the State that appellant had voluntarily consented to the search. Appellant filed a request for findings of fact and conclusions of law which the trial judge granted, but no findings are in the appellate record.[7]

## B.    The Court of Appeals

A divided court of appeals reversed the trial court, holding that "the State failed to clearly and convincingly prove that appellant granted the officer positive, unequivocal, and voluntary consent to search his car."[8] The majority opinion explained that the combination of Officer Williams's confusingly worded final question, together with appellant's

---

[7] The State filed a "Suggestion of Abatement" in the court of appeals requesting that the case be abated for the trial judge to enter findings of fact and conclusions of law as appellant had requested. The court of appeals denied that request without comment. Regardless of whether it should have permitted the entry of the required findings of fact, appellant did not object to the denial of that motion. The parties appear content with the record as it presently stands, and we can determine the factual basis of the trial judge's ruling. Therefore, we view all of the evidence in the light most favorable to the trial judge's ultimate ruling. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

[8] *Meekins*, 303 S.W.3d at 28.

evasiveness in answering, painted "not a picture of clarity or unequivocation, but rather one of vacillation and hesitance."[9]  The dissent took a more deferential approach to the judge's ruling.  Although the dissent agreed that appellant's answers could be described as "evasive," that "same evidence permitted the trial court to conclude appellant did not refuse the officer consent to search his car."[10]  We granted the State's petition to address the deference due to a trial judge's implied factual findings of a voluntary consent to search under the totality of the circumstances.

## II.

### A.    Consent to Search

Under the Fourth and Fourteenth Amendments, a search conducted without a warrant based on probable cause is "per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions."[11]  One of those exceptions is a search conducted with the person's voluntary consent.[12]  The validity of a consent to search is a question of fact to be determined from all the circumstances.[13]  A person's consent to search can be communicated to law enforcement in a variety of ways, including by words, action, or

---

[9] *Id.*

[10] *Id.* at 31 (Campbell, J., dissenting).

[11] *Schneckloth v. Bustamonte,* 412 U.S. 218, 219 (1973) (quoting *Katz v. United States,* 389 U.S. 347, 357 (1967)).

[12] *Schneckloth*, 412 U.S. at 219.

[13] *Id*. at 226-27; *see also Ohio v. Robinette,* 519 U.S. 33, 40 (1996); *Maxwell v. State,* 73 S.W.3d 278, 281 (Tex. Crim. App. 2002).

circumstantial evidence showing implied consent.[14] "But the Fourth and Fourteenth Amendments require that a consent not be coerced, by explicit or implicit means, by implied threat or covert force."[15] The voluntariness of a person's consent is also a question of fact[16] that is determined by analyzing all of the circumstances of a particular situation.[17] The trial judge must conduct a careful sifting and balancing of the unique facts and circumstances of each case in deciding whether a particular consent search was voluntary or coerced.[18]

"Reasonableness" is the touchstone for the Fourth Amendment; "reasonableness" is also the touchstone for determining voluntary consent to search.[19] The Supreme Court has explained, that "the standard for measuring the scope of consent under the Fourth Amendment is that of 'objective' reasonableness–what would the typical reasonable person

---

[14] *See Valtierra v. State*, 310 S.W.3d 442, 451-52 (Tex. Crim. App. 2010) (holding consent to enter defendant's apartment and speak with a suspected runaway in bathroom was sufficient, combined with other facts, to support implied consent to walk down the apartment hallway); *Johnson v. State*, 226 S.W.3d 439, 440-41 (Tex. Crim. App. 2007) (calling 911 and asking for police assistance constituted implied consent for police to enter defendant's home and investigate a homicide); *Gallups v. State*, 151 S.W.3d 196, 201 (Tex. Crim. App. 2004) (hand gesture made towards officer held to be sufficient consent for the officer to enter defendant's home).

[15] *Schneckloth*, 412 U.S. at 228. The Supreme Court then set out the converse: "[I]f under all the circumstances it has appeared that the consent was not given voluntarily–that it was coerced by threats or force, or granted only in submission to a claim of lawful authority–then we have found the consent invalid and the search unreasonable." *Id.* at 233.

[16] *Gutierrez v. State,* 221 S.W.3d 680, 686 (Tex. Crim. App. 2007).

[17] *Schneckloth*, 412 U.S. at 233.

[18] *Id.*

[19] *Florida v. Jimeno*, 500 U.S. 248, 250-51 (1991); *Valtierra,* 310 S.W.3d at 448-49.

have understood by the exchange between the officer and the suspect?"[20]  In other words,

courts review the totality of the circumstances of a particular police-citizen interaction from

the point of view of the objectively reasonable person, without regard for the subjective

thoughts or intents of either the officer or the citizen.[21]  The ultimate question is whether the

person's "'will ha[s] been overborne and his capacity for self-determination critically

impaired,'" such that his consent to search must have been involuntary.[22]

Under federal law, the government must show voluntary consent by a preponderance

of the evidence,[23] but Texas has long stated that the State must "prove the voluntariness of

a consent to search by clear and convincing evidence."[24]  While this burden differs somewhat

---

[20] *Jimeno*, 500 U.S. at 251; *see also Valtierra*, 310 S.W.3d at 449.

[21]*Maryland v. Macon*, 472 U.S. 463, 470-71 (1985) ("Whether a Fourth Amendment violation has occurred 'turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time,' and not on the officer's actual state of mind at the time the challenged action was taken.") (quoting *Scott v. United States*, 436 U.S. 128, 136 (1978)).

[22]  *United States v. Watson*, 423 U.S. 411, 424 (1976) (quoting *Schneckloth*, 412 U.S. at 225).

[23] *United States v. Matlock*, 415 U.S. 164, 178 n.14 (1974) ("[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence" to show voluntary consent to search); *United States v. Arias-Robles*, 477 F.3d 245, 248 (5th Cir. 2007) (imposing a preponderance of the evidence burden on the government to show voluntariness of consent).

[24] *State v. Ibarra*, 953 S.W.2d 242, 245 (Tex. Crim. App. 1997).  It is important to distinguish the burden of proof–clear and convincing evidence–from the separate, but not legally determinative, issue of "how" a person consented–clearly, convincingly, positively, unequivocally, and so forth.  The burden of proof question deals with the quantity and quality of evidence to establish that a person did, in fact, consent to a search, regardless of whether he did so only after initially hestitating and equivocating.  To ensure that the right legal issue is addressed, a reviewing court could pose the question as follows: Could a rational trier of fact

from that employed in the federal system, the legal analysis is the same in both Texas and

federal courts: whether consent was voluntary is a factual question and must be analyzed

based on the totality of the circumstances.[25]  Trial courts may consider numerous factors in

that analysis.[26]

**B.      Standard of Review**

Because issues of consent are necessarily fact intensive, a trial court's finding of

---

conclude, by clear and convincing evidence (less than beyond a reasonable doubt), based upon all of the facts and logical inferences that can be drawn from those facts, and in the light most favorable to the prosecution, that Mr. X voluntarily consented to the search?  *Cf. Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (in determining legal sufficiency of the evidence "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."); *United States v. Matlock*, 415 U.S. at 178 (suggesting that prosecution sustained its burden of proving, by preponderance of evidence, that evidence was legally sufficient to establish consent to search).  If a rational trier of fact could so conclude (even though other rational triers of fact might disagree) then the trial judge's factfinding must stand.  *See Schneckloth v. Bustamonte*, 412 U.S. at 226-27 (determining the factual question of whether a defendant voluntarily consented to a search by examining the totality of the surrounding circumstances).

[25] *Schneckloth*, 412 U.S. at 227; *Johnson v. State*, 226 S.W.3d 439, 443 (Tex. Crim. App. 2007).

[26] *See, e.g., United States v. Pena*, 143 F.3d 1363, 1367 (10th Cir. 1998).  The Tenth Circuit explained,

> In determining whether a consent to search was free from coercion, a court should consider, *inter alia*, physical mistreatment, use of violence, threats, threats of violence, promises or inducements, deception or trickery, and the physical and mental condition and capacity of the defendant within the totality of the circumstances.  An officer's request for consent to search does not taint an otherwise consensual encounter as long as the police do not convey a message that compliance with their request is required.

*Id.* (internal quotation marks omitted); *see also Reasor v. State*, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000) (noting factors that the Supreme Court has taken into consideration in determining whether consent is voluntary).

voluntariness must be accepted on appeal unless it is clearly erroneous.[27]  Likewise, a finding

of involuntariness is afforded the same great deference, because, as we have stated, "the

party that prevailed in the trial court is afforded the strongest legitimate view of the evidence

and all reasonable inferences that may be drawn from that evidence."[28]  When there are no

written findings explaining the factual basis for the trial judge's decision, we imply findings

of fact that support his ruling so long as the evidence supports those implied findings.[29]

**III.**

In this case, the State argues that the court of appeals departed from a totality-of-the-

circumstances review and failed to grant any deference to the trial judge's ruling.

Specifically, the State complains that the court of appeals relied exclusively on Officer

Williams's final question of "Do you mind if I look?" and what it decided was appellant's

response of "I guess"[30] to hold that there was no consent, rather than giving deference to

implied findings that support the trial judge's ruling.  It is the State's position that the

imprecise nature of communication is such that an analysis of isolated words alone does not

---

[27] *See Juarez v. State,* 758 S.W.2d 772, 781 (Tex. Crim. App. 1988) ("Voluntariness is a question of fact to be determined from the totality of the circumstances, and we accept the trial court's finding unless it is clearly erroneous") (internal citation omitted), *overruled on other grounds by Boyle v. State,* 820 S.W.2d 122 (Tex. Crim. App.1989).

[28] *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008).

[29] *Gutierrez*, 221 S.W.3d at 687.

[30] Because the court of appeals refused to allow supplementation of the record with the trial judge's written findings of fact, we do not know whether the trial judge believed Officer Williams's testimony that he thought appellant said "Yes," or the court reporter's transcription of the DVD in which she wrote appellant's response as "I guess."

necessarily fully reveal the message being conveyed.[31]  It is only by examining the context

of a communication that one can fairly deduce the intended meaning of words because the

same words may convey radically different meanings depending on context, the speaker, and

the listener.  In part, that is why reviewing courts defer to trial courts when assessing factual

findings.[32]

In this case, Officer Williams asked appellant six times whether he would consent to

a search of his car.  Appellant repeatedly stalled and evaded the question.  Finally, in

response to Officer Williams's specific question, "Do you mind if I look," appellant said,

"Yes" or "I guess."  What did he mean?  Appellant could be responding, "Yes, I do mind.

I do not want you to search my car."  On the other hand, given the numerous prior questions,

(including Officer Williams's previous straightforward inquiry, "I'm asking if I can look in

your vehicle.  It's yes or no."), it could mean "Yes, you can search my car."  Officer

Williams's question is hardly a model of clarity, and appellant's answer is fraught with

ambiguity.

---

[31] State's Brief at 11.

[32] Determinations of witness credibility are left entirely to the fact finder, who is in the unique position to observe the witness' body language, demeanor, tone of voice, and other indicia of credibility.  *See*, *e.g.*, *Cain v. State*, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997) (weight to be given testimonial evidence left to jury who can evaluate a witness's demeanor); *Williams v. State*, 692 S.W.2d 671, 676 (Tex. Crim. App. 1984) ("The trier of fact is the sole judge of the weight and credibility of the witnesses and may believe or disbelieve all or any part of any witness' testimony.").

The court of appeals aptly noted this problem.[33]  But it declined to view the evidence in the light most favorable to the trial judge's ruling because it concluded that "the situation before us is not one in which the historical facts are in dispute."[34]  But they are very much in dispute.  Everything hinges on the meaning of appellant's response and what a reasonable person standing in Officer Williams's shoes would conclude that he meant.  The court of appeals erred both in asserting that the facts were undisputed and in applying a *de novo* standard of review to the disputed facts.[35]

The court of appeals pointed to the audio-video recording and asserted, "What was

---

[33] *Meekins*, 303 S.W.3d at 28.  The court stated,
The officer had not asked "may I search" but rather "would you mind if I look?"

Answering "yes" to the latter meant that appellant did mind. Answering "I guess" also had and has like connotation; that is, saying "I guess" in response to being asked if one minds whether something happens can well indicate that he does. To this we add appellant's prior evasiveness in response to the officer's persistence in asking for consent. When combined, the circumstances paint not a picture of clarity or unequivocation but rather one of vacillation and hesitance. More importantly, to somehow conclude from the entirety of the scenario that saying "yes" or "I guess" meant that appellant finally acquiesced to the search invites speculation into various matters. Those matters consist of whether appellant failed to listen to the specific question asked by Williams, whether he ignored the last question and opted to answer those previously propounded, or whether he reinterpreted the question from one asking "would you mind" to one asking "may I search." Yet, authority denies both this court and the initial factfinder from engaging in speculation given the absence of supporting evidence.

[34] *Id.*

[35] *See id*. ("Simply put, the situation before us is not one in which the historical facts are in dispute, for they are not. . . . Thus, we are merely left with applying the undisputed facts to the law regarding consent, and that is a task undertaken *de novo*.").

said and done was said and done, neither can be questioned nor changed."[36]  True enough,

but the trial judge's task is to determine precisely what *was* said and then what was conveyed

by the totality of the circumstances.

Admittedly, the audio recording is not of the highest quality, but careful listening

would support an implied finding that appellant replied with a "Yes" to Officer Williams's

final question.  At a minimum, the recording fails to clearly rebut Officer Williams's

testimony that appellant said "Yes."[37]  But even if the trial judge concluded that appellant

said, "I guess," that phrase could reasonably be interpreted as a positive response, a

colloquial equivalent of "Yes."[38]  Indeed, the Texas Supreme Court has held that a person's

---

[36] *Id.*

[37] Appellant relies upon our decision in *Carmouche v. State*, 10 S.W.3d 323 (Tex. Crim. App. 2000), for the proposition that because Officer Williams's testimony did not precisely coincide with the court reporter's transcript of the audio recording, this Court should decline to give deference to the trial court's implied findings.  But in *Carmouche*, the video and audio tape directly contradicted the officer's testimony that the defendant consented to his request to perform a second pat-down by throwing his arms up in implicit consent.  The recording clearly showed that the officer told the defendant to put his arms up in the air and only then was he asked to consent to be searched, and, when the defendant gave no response, the officers began to pat him down.  *Id.* at 332  ("The tape does not support a conclusion that appellant made these gestures as an indication of consent.  Indeed, appellant turned around and assumed a position to facilitate the search after he was ordered to do so by one of the officers.").  The issue in this case is a simple ambiguity as to whether appellant responded "Yes," or "I guess" to Officer Williams's request.  But that ambiguity does not make a dispositive difference in any event.

[38] Oxford English Dictionary, p. 1223 "6. Sometimes used, with playful moderation of statement, in reference to what the speaker regards as a fact or a secure inference.  Hence [colloquialism] in the northern U.S. (sometimes with omission of the pronoun) = 'I am pretty sure.'" In several cases, the phrase "I guess," taken in combination with other circumstances, has been held to communicate consent.  *See, e.g., Davis v. State*, 694 S.E.2d 696, 697-98 (Ga. Ct. App. 2010) (deferring to finding of trial court that "I guess" constituted valid consent and defendant's detention was not unreasonably delayed by the request to search); *State v. Hiner*, 246 P.3d 35, 38-39 (Or. Ct. App. 2010) (defendant's response of "Well, I guess I have to" when

response of "I guess so," to an officer's request to search, combined with other circumstances, supported the trial judge's finding that the person had voluntarily consented to the search.[39]

But regardless of whether appellant said "Yes," or "I guess," the trial judge was also required to decide what an objectively reasonable person standing in Officer Williams's shoes would conclude that response meant.[40]  Both Officer Williams's conduct and that of appellant immediately after the response would support the trial judge's implicit finding that appellant intended to consent.  While appellant's response of "Yes" or "I guess" may be open to interpretation, there can be little doubt that Officer Williams believed that appellant consented because he immediately asked appellant to step out of the car so that the officer could search it without difficulty.[41]  And appellant did so.[42]  If appellant had intended to

_____

asked for permission to search his person constituted valid consent); *but see United States v. Worley*, 193 F.3d 380, 387 (6th Cir. 1999) ("You've got the badge, I guess you can" was not valid consent to a search of defendant's bag in an airport).

[39] *State v. $217,590.00 in U.S. Currency*, 18 S.W.3d 631, 633, 635 (Tex. 2000) (agreeing with trial judge that truck driver voluntarily consented to search of his truck by replying "I guess so," when asked for permission, and officer did not threaten driver or display a weapon as the two stood by the highway).

[40] *See United States v. $117,920.00 in U.S. Currency*, 413 F.3d 826, 828 (8th Cir. 2005) (concluding that trial judge could find that suspect, who responded "I guess if you want to" to trooper's request to search his car, voluntarily consented; "reply to the trooper was sufficient to cause a reasonable person to believe he had consented and was therefore not impermissibly equivocal or unspecific.").

[41] The court of appeals agreed that Officer Williams believed that appellant had consented when he asked appellant to step out of the car.  *Meekins*, 303 S.W.3d at 27 ("Nor does anyone dispute that the officer's directive to exit arose from what he believed to be appellant's consent to search.").  Officer Williams's subjective belief is not determinative and is relevant only to the

refuse consent, it seems reasonable that he would have objected, complained, or refused to get out of his car.  Instead, he readily complied.

Appellant argues that, even if the court of appeals erred by using a *de novo* standard of review, "the only reasonable conclusion to be made is that Appellant *relented* to Officer Williams's repeated requests to search his car as opposed to *consented*."[43]  Not all compliance is mere acquiescence to official authority, however.[44]  "Mere acquiescence" may

---

extent that appellant's words and actions would have communicated his consent to the reasonable person in Officer Williams's shoes.

[42] As an example of a situation in which the defendant's ambiguous response to a request to search, coupled with his actions immediately after that, supported the trial judge's ruling that the defendant consented to the search of his suitcase, see *United States v. Harfst*, 81 F.3d 173, 1996 U.S. App. LEXIS 5298 (10th Cir. 1996) (not designated for publication) (reviewing audio tape of interaction and noting that, "Although defendant responded, 'I guess I don't,' the second time Agent Small requested consent to search the suitcase, we agree with the district court that the inflection of defendant's voice indicates an affirmative response. Following that response, defendant opened his suitcase, tilted it towards Agent Small and moved things around."). Although we do not rely upon this unpublished decision, it shows the deference that is due the trial judge's determination when a person's oral response to a request to search is ambiguous.

[43] Appellant's Brief at 6.

[44] In deciding whether a consent to search was voluntarily given, we follow the Supreme Court's discussion in *Schneckloth*.  In *Reasor v. State*, 12 S.W.3d 813 (Tex. Crim. App. 2000), we stated,

> By looking at the circumstances leading up to the search, the reaction of the accused to pressure, and any other factor deemed relevant, a trial court can determine whether the statement of consent was given voluntarily. Some relevant factors the Supreme Court has taken into consideration in past cases are: the youth of the accused, the education of the accused, the intelligence of the accused, the constitutional advice given to the accused, the length of the detention, the repetitiveness of the questioning, and the use of physical punishment.

*Id.* at 818 (citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 226 (1973)).  We specifically stated that "a trial court" can determine voluntariness based on these relevant factors.

Some Texas courts of appeals have set out an even more elaborate list of possible factors that trial judges may consider.

constitute a finding of consent.[45]  Furthermore, repeatedly asking for consent does not result

in coercion, particularly when the person refuses to answer or is otherwise evasive in his

response.[46]  Appellant has presented no evidence of factors that would tend to show coercion,

_____

> Several factors are to be examined in order to determine whether an appellant freely and voluntarily consented: (1) whether, and to what extent, officers exhibited a show of force, including a display of weapons; (2) whether the actions of the arresting officers can be classified as flagrant misconduct; (3) whether the police threatened to obtain a search warrant if the detainee did not acquiesce, or whether the police claimed a right to search; (4) whether police first gave appellant his *Miranda* warnings; (5) whether the arrest was made in order to obtain consent; (6) whether appellant knew that he could refuse to allow a search; (7) whether consent was first offered by appellant or was in response to police request; (8) appellant's education, intelligence, and physical condition; and (9) the proximity of the consent to the arrest, since an intervening time period can provide a degree of attenuation of the taint.

*Frierson v. State,* 839 S.W.2d 841, 851 (Tex. App.–Dallas 1992, pet. ref'd); *see also State v. Williams*, 312 S.W.3d 276, 284 (Tex. App.–Houston [14th Dist.] 2010, no pet. h.) (factors that courts may use to determine the voluntariness of consent include: "(1) whether the consenting person was in custody; (2) whether the suspect was arrested at gunpoint; (3) whether the suspect had the option of refusing consent; (4) the constitutional advice given to the suspect; (5) the length of detention; (6) the repetitiveness of the questioning; and (7) the use of physical punishment" as well as the suspect's age, intelligence, and education).

[45] *State v. Kelly*, 204 S.W.3d 808, 820-21 (Tex. Crim. App. 2006).  In *Kelly*, the defendant argued that she "merely acquiesced" to the request for a blood sample, thus, she did not affirmatively consent.  We stated that,

> [A]n express or implied finding of "mere acquiescence" to Gosson's blood draw also constitutes a finding of consent to the blood draw. Webster's II *New Collegiate Dictionary* defines "consent" as, among other things, "[v]oluntary allowance of what is planned or done by another." Webster's II *New Collegiate Dictionary* 240 (1999). We further note that this same dictionary defines "acquiesce" as, among other things, "[t]o consent or comply without protest." Webster's II *New Collegiate Dictionary* 10 (1999). Also, according to the *Roget's Desk Thesaurus,* "consent" and "acquiesce" are synonymous terms. *Roget's Desk Thesaurus* 9, 111 (2001).

[46] *See United States v. Pulvano*, 629 F.2d 1151, 1157 (5th Cir. 1980) (appellant's eventual consent to search was not coerced despite repeated requests for consent prior to and following his arrest; "One who refuses to cooperate with the police on the grounds that he is constitutionally permitted to do so, may change his mind at some later time and decide to voluntarily

such as an officer's display of a weapon, threats, promises, deception, physical touching, or a demanding tone of voice or language.[47]  Officer Williams's action of merely repeating his question several times and asking for a specific "yes or no" response in the face of appellant's evident evasiveness does not rise to the level of official coercion.  Indeed, there is indication from the Supreme Court that asking repeated questions or talking at a non-responsive, uncooperative suspect is not a coercive technique.[48]

From the arguments and evidence presented at the suppression hearing, the trial judge made a reasonable ruling based upon the totality of the circumstances.  As stated by the dissent in the lower court, "Accepting the [majority's] conclusion as correct, surely the same evidence permitted the trial court to conclude appellant did not refuse the officer consent to search his car."[49]  Put simply, there is more than one permissible view of the totality of the evidence.  This case is an excellent example of why appellate courts should have the trial judge's findings of fact before disagreeing with that judge's ruling on a motion to suppress.  The court of appeals would have been well served to allow supplementation of the record

cooperate.").

[47] *United States v. Mendenhall*, 446 U.S. 544, 554 (1980); *United States v. West*, 219 F.3d 1171, 1177 (10th Cir. 2000) (although defendant initially hesitated when asked for consent to search his car, "there were no threats made, no cajoling, or demand of defendant to obtain consent. No pressure was applied by Deputy Barney against the defendant.")

[48] *Berghuis v. Thompkins*, 130 S.Ct. 2250, 2263 (2010) (murder suspect, who remained largely silent in the face of police questioning for three hours was not coerced into answering and his few one-word responses were admissible).

[49] *Meekins*, 303 S.W.3d at 31 (Campbell, J., dissenting).

with the findings of fact that appellant had requested.[50]

Viewing the totality of the circumstances in the light most favorable to the trial judge's ruling, we conclude that he did not abuse his discretion in finding that appellant voluntarily consented to a search of his car.  Of course, had the trial judge found that appellant did not, in fact, voluntarily consent, we would uphold that factual finding as well, given the totality of the circumstances in this case.[51]

We therefore reverse the court of appeals and affirm the judgment of the trial court.

Delivered: May 4, 2011
Publish

---

[50] *See* note 7 *supra.*

[51] *See, e.g., United States v. Randall*, 211 F. Supp. 2d 1127, 1135-36 (D. Neb. 2001) (trial judge found that defendant's apparently puzzled response of "I guess.  I mean I guess" to officer's request to search her car after he had completed traffic stop but commenced asking her questions did not demonstrate voluntary consent;  "Her significant hesitation and implicit objection to further contact with the officer were evident in the videotape and her statement, 'What choice do I have?' Rather than advising the defendant that she could choose not to answer any questions and remained 'free to go,' the questioning by Trooper Pelster began. . . . Having observed Ms. Randall's testimony and appearance as a witness, as well as the videotape of this traffic stop, I find that Ms. Randall was acceding to the authority of Trooper Pelster rather than voluntarily consenting to the search.").