

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-18-00191-CR

---

TYREE JAMAR LOVE, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 82nd District Court
Robertson County, Texas
Trial Court No. 17-07-20498-CR, Honorable Robert Miller Stem, Presiding

---

January 25, 2019

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PARKER, JJ.

Appellant, Tyree Jamar Love, appeals his conviction for unlawful possession of a firearm by a felon.[1] His sole issue on appeal concerns the trial court's denial of his motion to suppress evidence. The evidence in question was the firearm found by a DPS trooper (Holley) within the console of appellant's vehicle. The trooper initially stopped appellant based upon a BOLO dispatch. Issued by the Waco Police Department, the BOLO

---

[1] Because this appeal was transferred from the Tenth Court of Appeals, we are obligated to apply its precedent when available in the event of a conflict between the precedents of that court and this Court. See TEX. R. APP. P. 41.3.

informed the trooper to "be on the lookout" for "a gold passenger car involved in a – at the time it was reported, it was an aggravated kidnapping of children." Holley testified that the dispatch initially included "no other information, no suspect information," save "an address in Bryan, Texas." A subsequent dispatch included reference to appellant's name and a firearm. Holley encountered the "gold vehicle" driving on Highway 6 between Waco and Bryan, Texas, around 10:30 p.m., made the stop, asked questions of appellant, found appellant allegedly uncooperative, removed appellant from the car, and escorted him to the back of the vehicle. Other troopers, a sheriff's deputy, and a local police officer had arrived by then. After about forty minutes standing on the side of the road at night and law enforcement official having twice entered appellant's vehicle, Holley asked for consent to search it. The trial court found that appellant voluntarily gave the trooper such consent. That search resulted in the discovery of the handgun. We affirm.

Before the search during which the firearm was discovered, the following exchange (captured on a video/audio recording) occurred between appellant and Holley.

Officer Holley: Mind if we look?

Appellant: I thought you just looked.

Unidentified Officer: Checking on the kids.

Officer Holley: (Inaudible) check on the kids (inaudible).

Appellant: I thought he did a search.

Officer Holley: Nah, he was just checking on the kids.

Appellant: Can we wait on Waco P.D.? I mean, I am trying to understand here.

Officer Holley: Yeah, I'm just—look—let me look in the car real quick. We'll be good. Waco will be good. You'll be on your way. You good with that?

2

Appellant: I mean, I don't really got no problem with that. I'm trying to see what it is (inaudible).

Officer Holley: Yeah, I'm trying to see too, man. I'll let you know what Waco tells me.

The same recording also depicted appellant, at the time, standing un-handcuffed against the trunk of his vehicle with three law enforcement officers standing near him. None had their weapons drawn. Nor can they be heard making threats or talking in raised voices. Moments earlier, appellant can be seen intermittently operating his cell phone and standing with his arms crossed while casually answering questions about what he did, how the children in the car were, and when their school year ended.

Appellant challenges the search which yielded the firearm; he does not appear to contest the legality of the initial traffic stop. Under the Fourth and Fourteenth Amendments, a search conducted without a warrant based on probable cause is "per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." *Meekins v. State*, 340 S.W.3d 454, 458 (Tex. Crim. App. 2011). One of those few exceptions is a search conducted pursuant to the person's voluntary consent. *Id.* The validity of a consent to search is a question of fact to be determined from all the circumstances. *Id.*

A person's consent to search can be communicated to law enforcement in a variety of ways, including by words, action, or circumstantial evidence showing implied consent. "But the Fourth and Fourteenth Amendments require that a consent not be coerced, by explicit or implicit means, by implied threat or covert force." *Id.* at 458–59. Furthermore, the State must prove by clear and convincing evidence that the consent was freely and

3

voluntarily given.  *See Johnson v. State*, 226 S.W.3d 439, 443 (Tex. Crim. App. 2007).[2]  In determining that issue, we assess the totality of the circumstances from the point of view of an objectively reasonable person.  *Tucker v. State*, 369 S.W.3d 179, 185 (Tex. Crim. App. 2012).  And a myriad of indicia have been mentioned in precedent to guide our decision.  They include such things as the length of the detention, the duration of the questioning, the repetitiveness of the questions, the appellant's awareness of his right to deny consent, and the psychological impact the questioning and circumstances had on the appellant. *Id.*

We have also been told that, because issues of consent are necessarily fact intensive, a trial court's finding of voluntariness must be accepted on appeal unless it is clearly erroneous.  *Meekins*, 340 S.W.3d at 460.  That is to say, "the party that prevailed in the trial court is afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence."  *Id.* (quoting *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008)).

It has become a cliché that pictures paint a thousand words; they do here.  The video at bar supplies what cold words in a hearing transcript omit.  It takes little imagination to interpret Holley's query about "mind if we look" as a request to search the car.  Appellant's responses to same evince a person not willing to simply kowtow to authority but, rather, someone willing to question that authority.  Indeed, upon being asked to consent, he seemed to challenge Holley by asking him to explain what occurred when the officers entered the car earlier and why those were not searches and, in

---

[2] The federal constitution requires the State to prove the validity of the consent by a preponderance of the evidence; the Texas Constitution requires the State to show by clear and convincing evidence that the consent was valid.  *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002) (en banc) (citing *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000)).

4

themselves, enough. Earlier, upon being stopped and directed to exit the car, appellant can be heard asking why he was stopped and telling the officers that he had a "right" to know that information. He persisted in his position, accused the officers of being aggressive as they continued to ask him to exit, and told them that they did not need to "handle" him as they did in grasping his arm and moving him to the rear of the vehicle.

No doubt tensions initially ran high given that one officer drew his sidearm when appellant was being removed from the car as Holley seemed to grasp appellant's arm. Holley also can be heard saying something like appellant was about to see "aggressive" immediately before appellant was removed. Yet, minutes passed and dispositions cooled after appellant was made to stand at the rear of the vehicle. Discussion ensued between appellant and the officers coupled with explanations from Holley about what was happening and why. Officers also milled back and forth, on and off the video screen. Appellant can even be seen talking on his cell phone and otherwise operating the device.

About thirty-two minutes after the stop and after Holley had attempted to clarify matters with the Waco police, the trooper asked his question about appellant caring whether they looked in the car. Upon hearing appellant's response, Holley began his search. Once the search began, appellant did not object by word or conduct; he simply stood with his arms crossed for the most part.

The trial court had before it evidence from which it could conclude that 1) a reasonable officer in Holley's position could interpret the statement "I mean, I don't really got no problem with that" as consent to search the vehicle and 2) the consent was voluntary. *See Meekins*, 340 S.W.3d at 463 (holding that the circumstances involved there permitted the trial court to decide that appellant's ambiguous answer of "I guess" to

5

the officer's ambiguous question of "do you mind if I look" supported an objectively reasonable person's deduction that appellant gave consent to search the vehicle).  Here, the evidence can be interpreted as illustrating that appellant had little fear of or felt little duress from Holley or the other law enforcement officials.  Being required to defer to the trial court's adjudication of the historical facts, per *Meekins*, we cannot say that the trial court erred in deeming appellant to have voluntarily consented to Holley's search.[3]

Disposition of the issue of consent renders it unnecessary to address the other issues raised by appellant.  *See* TEX. R. APP. P. 47.1.  Appellant's sole issue is overruled, and the trial court's judgment is affirmed.

Per Curiam

Do not publish.

---

[3] Counsel for appellant also advanced the position "that the U.S. and Texas Constitutions' protections against unreasonable search and seizure and self-incrimination require explicit warnings to the accused that he or she can deny consent to search when the state asks for that consent," though he candidly admitted that "[p]recedent from our highest courts, however, currently indicates otherwise."  We appreciate counsel's position and his arguments in support of the change in law, but, as he acknowledged, it is not our role, as an intermediate appellate court, to create this new principle of law.  Rather, we are "bound by the precedent of the Texas Court of Criminal Appeals and [have] no authority to disregard or overrule the precedent" as set by that court.  *Sierra v. State*, 157 S.W.3d 52, 60 (Tex. App.—Fort Worth 2004), *aff'd*, 218 S.W.3d 85 (Tex. Crim. App. 2007).