# In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

### NO. 09-15-00058-CR
_____

### PATRICK NICHOLAS TAYLOR, Appellant

### V.

### THE STATE OF TEXAS, Appellee

_____

**On Appeal from the 411th District Court
Polk County, Texas
Trial Cause No. 23362**

_____

### MEMORANDUM OPINION

In this appeal, we are asked to determine whether the trial court abused its discretion in finding that Patrick Nicholas Taylor or his mother voluntarily consented to the request by a deputy employed by the Polk County Sherriff's Department to search the RV where they were living. Because the trial court's ruling to admit the evidence in the search of the RV is supported by evidence the

1

trial court considered during the pre-trial hearing[1] that it conducted to address whether the evidence should be admitted during Taylor's trial, we conclude that Taylor's complaint is without merit and that the judgement should be affirmed. Therefore, we affirm the jury's verdict finding Taylor guilty of possessing methamphetamine, a controlled substance. *See* Tex. Health & Safety Code Ann. § 481.115(d) (West 2010).

---

[1] Taylor did not file a written motion to suppress the evidence that the deputy obtained in his search; instead, the issue regarding whether Taylor or his mother voluntarily consented to the search arose on the morning before the trial commenced while the court was considering Taylor's motion in limine. Taylor's motion included a number of matters, including a request to bar any testimony related to the seizure of items that the deputy found in his search of the RV. In its brief, the State has not argued that Taylor, by failing to file a motion to suppress or by failing to object to the evidence during the trial, failed to preserve his complaint about the admission of the evidence for review on appeal. Nonetheless, we conclude that the trial court made an evidence-based pre-trial ruling that focused on whether the deputy obtained the necessary consent for the search conducted of the RV. Additionally, the record reflects the trial court expressly ruled on Taylor's request in a pre-trial proceeding, finding that the deputy obtained the necessary consent required for the search. Therefore, we conclude that Taylor did not waive his right to have the complaint he has raised about the admission of the fruits of the search reviewed on appeal. *See* Tex. R. App. P. 33.1 (indicating that error preservation for purposes of appellate review requires the complaining party to demonstrate that the complaint made on appeal was presented to the trial court in a timely request, objection, or motion, and to show that the trial court ruled on the request); *see also Writt v. State*, 541 S.W.2d 424, 426 (Tex. Crim. App. 1976) (noting that when the defendant's request to suppress evidence is supported by evidence and the trial court considered evidence to resolve the motion in a pre-trial hearing, the trial court's ruling, for purposes of appeal, preserves error even if the defendant in the course of the trial later fails to object to the admission of the evidence made the subject of his pre-trial motion).

## Background

After receiving a tip from an informant[2] that Taylor was selling methamphetamine in a trailer park located near a prison, two deputies, both employed by the Polk County Sheriff's Office, went to the park where the RV in which Taylor was living was parked. During the suppression hearing, one of the deputies testified that when he approached Taylor's RV, he noticed there were two women on the porch. The deputy asked one of the women, subsequently identified as Taylor's mother, if Taylor was inside. When Taylor's mother said he was, the deputy asked Taylor's mother to ask that Taylor come outside. When Taylor's mother went inside, the deputy indicated that he heard Taylor's mother yell to Taylor that "the cops" were there looking for him. According to the deputy, he stepped just inside the door of the RV due to his concerns for safety. After stepping inside the door of the RV, the deputy indicated that he saw Taylor standing near a bedroom door. When the deputy asked Taylor and his mother to step outside, they complied.

The deputy indicated that he began to talk to Taylor while Taylor and his mother were both standing outside the RV. The deputy testified that he told Taylor

---

[2] On cross-examination at the pre-trial hearing, the deputy indicated that before he received the tip that caused him to go to Taylor's RV, the informant had never before given him any tips.

an informant had told him that Taylor was selling methamphetamine from the RV. However, Taylor denied that the tip was true. The deputy indicated that he asked Taylor if Taylor used "narcotics or anything like that[;]" according to the deputy, Taylor told him that he used a specific type of cannabis, which Taylor named. Subsequently, according to the deputy, Taylor admitted that he had an illegal drug inside the RV. When Taylor turned and began walking towards the RV, the other deputy, standing near them, drew his taser. The deputy questioning Taylor requested that Taylor come back towards him, and he also requested that the other deputy stop pointing his taser at Taylor. At that point, the other deputy quit pointing his taser at Taylor, and Taylor then began to calm down.

According to the testimony of the deputy who interviewed Taylor, Taylor denied the deputy's accusation that he was selling drugs from the RV. The deputy explained that he asked Taylor if he could search the RV, but Taylor refused. At that point, the deputy indicated that he had Taylor and his mother stand outside the RV while he began the process of requesting a warrant authorizing the RV's search using a laptop that he had in his car. According to the deputy, Taylor then changed his mind about whether he would allow the RV to be searched. After Taylor advised the deputy that he would consent to the search, the deputy gave Taylor and

4

his mother a document,[3] in which they indicated they were agreeing to his request to search their RV. The deputy testified that Taylor and his mother both signed the consent form, and the consent form is in the record and it was admitted into evidence during the guilt-innocence phase of Taylor's trial.

On cross-examination, the deputy denied that he ever said anything to Taylor that might have caused Taylor to believe that Taylor's mother would be arrested had Taylor refused his request to search the RV. The deputy indicated that in searching the RV, the officers found methamphetamine. According to the deputy, after he located the methamphetamine, he arrested Taylor "for manufactur[ing] and deliver[ing] a controlled substance."[4]

Taylor's account of the events, as he described them during the pre-trial hearing, differs in several respects from the account given by the deputy who

[3] The document Taylor and his mother signed indicating that they consented to the search of the RV was referenced by both parties during the pre-trial hearing; however, neither attorney had the document marked as an exhibit for the record that they created to reflect what occurred during the suppression hearing. Nevertheless, the written consent, signed by Taylor and his mother, was subsequently admitted into evidence during Taylor's trial: it states that Taylor and his mother freely consented "without being subjected to any threats, promises, compulsion or persuasion of any kind[,]" and Taylor and his mother also acknowledged that any items that the police seized in the search could be used against them in criminal proceedings.

[4] Approximately one year after the search, a grand jury indicted Taylor for possessing a controlled substance, methamphetamine, alleging that the offense occurred on or about April 25, 2013.

testified at the hearing. According to Taylor, he was asleep in a bedroom in the RV when his mother called him. When he walked out of the bedroom into a bathroom inside the RV, he saw a deputy standing near a door in the RV that opened onto the RV's porch. According to Taylor, the deputy asked him to step outside, and the deputy informed him that "he wanted to have a conversation with me concerning an anonymous tip." Taylor indicated that while he was talking to the deputy outside the RV, the deputy told him that an informant related to the deputy that Taylor was "cooking or manufacturing methamphetamines in the trailer." Taylor testified that he denied the accusation, and he indicated that he became frustrated when the deputy continued to question him about drugs after he denied the accusation that he was manufacturing drugs in the RV. Taylor indicated that when the deputy continued to question him, he informed the deputy that their conversation was over and that he was going back inside his residence. According to Taylor, when he turned to leave, the deputy questioning him put his hand on his gun, while another other nearby deputy pulled out his taser. According to Taylor, at that point, he held out his arms and said to the deputy who was questioning him that if he was going to shoot him, go ahead, but if he did, he would "have [his] badge by the end of the day and sue the police department." Taylor indicated that after he offered to surrender, the deputy questioning him told him to calm down.

6

At that point, Taylor indicated that he put his hands behind his back, and that a few minutes later, the situation outside the RV had calmed and the deputy that had pointed his taser at Taylor put his taser away.

Taylor explained that the deputy questioning him told him that his informant had been watching Taylor for some time, that the deputy knew that Taylor's mother owned the trailer, and that he would make sure that Taylor's mother went to jail for whatever they found in the RV if Taylor forced them to obtain a warrant to search the RV. According to Taylor, the deputy told him that it was in Taylor's interest to allow the police to search the RV; otherwise, the deputy indicated that Taylor's mother would be required to wait in the cold standing outside the RV while the deputy arranged for a warrant, and that he would then make sure that she would be the person they made "take the fall and go to jail." Taylor indicated that it was cold outside the RV in late April 2013 when the police were at the RV requesting permission to allow them to conduct a search. Taylor testified that he signed the consent form allowing the search because he was in fear of his mother's well-being and because he was worried that they had no other place to live.

After the police finished their search and found the contraband that was the subject of Taylor's trial, Taylor indicated he told the deputies that he had been in Houston that day, that he was in the middle of a divorce, and that his wife had

7

"possibly planted [the contraband] while [he] was away[.]" Taylor agreed that he and his mother signed the consent for the search. Taylor indicated that after the RV was searched, the deputies did not arrest his mother.

Analysis

Under the Fourth and Fourteenth Amendments, a search conducted by police with a person's voluntary consent is not unreasonable. *Meekins v. State*, 340 S.W.3d 454, 458 (Tex. Crim. App. 2011). The question of whether the defendant or a person who controlled the property that police searched consented to a request by governmental officials to search the property is a matter that presents a trial court with a question that must be determined based on all of the circumstances that the factfinder concludes occurred surrounding the search. *Id.* (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)).

With respect to Taylor's argument that he did not consent to the search,[5] the trial court ruled that Taylor and his mother's consent had been voluntarily

---

[5] According to Taylor's testimony, the deputy questioning him "knew the house was in my mother's name[.]" In other places in his testimony, he refers to the RV as his home. In his appeal, Taylor has not argued that his mother could not consent to the deputy's request to search the RV that she owned, and since he did not file a formal motion to suppress, it is also unclear whether the trial court focused on whether Taylor's mother could have consented to the search. Here, the trial court's finding on consent fails to distinguish between whether the valid consent came from Taylor, his mother, or from both. We note that generally, the owner of the residence in which the person is living can consent to a request by

8

obtained. A trial court's finding that a defendant consented to a requested search is reviewed using a bifurcated standard. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). Under this bifurcated standard, the trial court's factual findings are reviewed under an abuse-of-discretion standard. *Id*. When a trial court's findings of historical fact are supported by the evidence that was before the court when it ruled, its findings are given almost total deference in the appeal because such findings are usually dependent on the trial court's evaluation of the credibility of the witnesses who testified. *See Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). Under Texas law, the State has the burden to demonstrate to the trial court by clear and convincing evidence that the defendant or the owner of the property consented to the search voluntarily. *State v. Ibarra*, 953 S.W.2d 242, 245 (Tex. Crim. App. 1997).

Because the trial court's ruling in Taylor's case followed a hearing in which the witnesses gave somewhat inconsistent accounts of the historical events that led

---

police to search the residence, even if the search will necessarily implicate privacy rights of others who also live there. *See Hubert v. State*, 312 S.W.3d 554, 560 (Tex. Crim. App. 2010) ("A third party can consent to a search to the detriment of another's privacy interest if the third party has actual authority over the place or thing to be searched."). Because we resolve the case on the basis of Taylor's consent—an issue the parties join in their respective briefs—we need not reach the question of whether an alternative ground for the ruling exists that might result in the holding that Taylor's mother's consent justified the warrantless search of the RV where Taylor lived.

Taylor and his mother to sign the consent that authorized the search, the trial court was required to resolve the discrepancies as matters of credibility in deciding whether Taylor and his mother voluntarily consented to the deputy's request to search the RV. *See Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). As the trier of fact, the trial court could reasonably have chosen to believe the testimony of the deputy who questioned Taylor and chosen not to believe all or portions of Taylor's testimony in the process of deciding Taylor's motion seeking to exclude the contraband that police found in their search. *See State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). Regardless of the trial court's ruling on a motion to suppress evidence, on appeal, the appeals court is required to review the trial court's ruling in the light most favorable to upholding the ruling on the request a defendant makes to exclude evidence. *See Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010).

In Taylor's case, the trial court, at the conclusion of the hearing, orally pronounced its finding that the consent the deputy needed to conduct the search had been voluntarily obtained. When a trial court makes oral findings on a motion to suppress, its oral findings are given the same deference that is given to written findings. *See State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006) (stating that the trial court's findings and conclusions from the suppression hearing need to

10

be recorded in some way, whether written or stated on the record at the hearing); *Flores v. State*, 177 S.W.3d 8, 14 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (applying an abuse-of-discretion standard to the review of a trial court's oral findings that followed a hearing on a motion to suppress).

In Taylor's case, the trial court found that the consent to search the RV was voluntary, and that finding is supported by ample evidence that the trial court could have reasonably found believable during the pre-trial hearing. The testimony from the pre-trial hearing indicates that Taylor and his mother signed the written consent form before the RV was searched. Additionally, the trial court could reasonably believe the deputy's testimony that the deputy never threatened to arrest Taylor's mother before Taylor agreed to allow the deputy to search the RV, to believe the deputy's testimony that all weapons had been put away and that Taylor had calmed down before signing the consent, and to believe the deputy's testimony that he read the consent to Taylor before Taylor decided to sign it. Additionally, it would not be unreasonable for the trial court to have relied on language in the consent form itself, found just above Taylor's signature, which indicates that Taylor was consenting to the requested search freely, without threat, promise, and without compulsion of any kind.

We conclude that the State provided the trial court with clear and convincing evidence showing that Taylor and his mother voluntarily consented to the requested search; therefore, we hold the State was not required to obtain a search warrant to search the RV. *See McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003) (explaining that a voluntary consent to a search is one of the exceptions to the Fourth Amendment, which generally requires the State to obtain a search warrant to search a defendant's property). We hold the trial court did not abuse its discretion by finding Taylor and his mother voluntarily consented to the search of their RV. *See Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011); *accord State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). We overrule Taylor's sole issue, and we affirm the trial court's judgment.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on November 16, 2015
Opinion Delivered June 1, 2016
Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.