

## NUMBER 13-17-00201-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

TIPHANIE RAQUEL TIPPIN,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                        Appellee.

**On appeal from the 377th District Court
of Victoria County, Texas.**

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Benavides
Memorandum Opinion by Chief Justice Valdez**

This appeal arises from the trial court's ruling to deny appellant Tiphanie Raquel

Tippin's motion to suppress. Tippin appeals the trial court's denial by two issues. First,

Tippin contends she never granted consent to the Victoria Police Department to search

her room. Second, if Tippin did grant consent, it was not granted freely and voluntarily. We affirm.

## I.  BACKGROUND

### 1.  Procedural History

Tippin was indicted for intentionally or knowingly possessing marihuana in an amount of five pounds or less but more than four ounces, a state-jail felony. *See* TEX. HEALTH and SAFETY CODE ANN. § 481.121(b)(3) (West, Westlaw through 2017 1st C.S). On or about May 14, 2014, marihuana was found in Tippin's vehicle and in her residence at 4115 Callis Street, Victoria Texas.[1]

On July 20, 2015, Tippin filed a pretrial motion to suppress. The motion concerned evidence alleged to have been illegally seized on or about May 14, 2014. A hearing on the pretrial motion to suppress was held on December 2, 2015. The motion was denied on December 10, 2015.

### 2.  Pretrial Motion to Suppress Hearing

Prior to any testimony, the State conceded the search was conducted on or about May 14, 2014 without a search warrant.

The State first called Jerry Sepulveda, an officer for Victoria P.D. to testify. Officer Sepulveda stated that he had a body camera on him and he notified the other detectives of his body camera when he arrived at 4115 Callis Street. Tippin lived at that address with her uncle, Walter Cantu. After Cantu consented to a search, Officer Sepulveda found marihuana inside Cantu's house. Officer Sepulveda also stated that the officers were

---

[1] The record is not clear as to whether the marihuana found at both places was combined for the purposes of the indictment.

unable to enter a locked room belonging to Tippin. Officer Sepulveda testified that when Tippin arrived at the scene, he did not witness any of the conversation that took place outside between Tippin and the other officers. Officer Sepulveda stayed inside with Cantu. Officer Sepulveda recalled that Sergeant Clay Fetters told him to continue recording with his body camera but that the latter half of the body camera recording did not have any audio. On cross-examination, Officer Sepulveda testified that he did not know whether consent had been given by Tippin to search her locked room.

The State then called Dennis Paine, a detective for Victoria P.D. Detective Paine stated that he received information about marihuana being sold at 4115 Callis Street, and in response, he conducted surveillance on that property, conducted a traffic stop on a vehicle leaving that location, and returned to 4115 Callis Street to conduct a knock-and-talk investigation. Detective Paine stated that Cantu gave him consent to search his house and revealed to Detective Paine he had marihuana inside. When Tippin arrived to the location, Detective Paine testified that he asked for consent to search her room and if she would unlock it. Detective Paine testified that Tippin gave consent to search and went directly into the house to unlock her room.

Detective Paine stated he first met with Tippin earlier that day when he conducted a traffic stop of Tippin's vehicle leaving 4115 Callis Street. Detective Paine said Tippin did not initially provide consent to search her vehicle during the traffic stop but then revealed she had marihuana after being told there would be a drug sniffing dog deployed near her vehicle. Detective Paine testified that Tippin exhibited no resistance when she provided consent to search her room. Detective Paine could not remember the exact words he used to ask Tippin for consent and could only remember what was stated in

3

general terms as his notes did not have any direct quotes from his conversation with Tippin. Detective Paine said he remembers Sergeant Fetters asking Tippin one more time for consent while inside the house. Detective Paine did not recall any resistance on the part of Tippin when unlocking her door.

On cross-examination, Detective Paine stated Tippin did not sign a consent form because he believed Tippin's consent was recorded on video. Detective Paine did not remember the exact words used by Sergeant Fetters when he asked Tippin for consent. Detective Paine confirmed that neither of Tippin's grants of consent were memorialized. Detective Paine said he noticed Tippin dry heaving when he was searching her room.

On redirect examination, Detective Paine stated it would not be out of the norm for him to have used the same words he used with Cantu to gain consent from Tippin. Detective Paine went on to state that he did not threaten or promise anything to Tippin in his conversation with her. In reference to the earlier contact Detective Paine made with Tippin, Detective Paine stated that telling a person who has denied consent that they were going to use a drug sniffing dog could be perceived as pressure.

Next, the State called Sergeant Fetters. Sergeant Fetters testified that he first came into contact with Tippin when she was stopped for a traffic violation, that Tippin was compliant during the traffic stop, and she was given an opportunity to become an informant. After Tippin declined the opportunity, Sergeant Fetters proceeded to Cantu's house for further investigation.

Sergeant Fetters was present for most of the conversation that took place outside of the house between Detective Paine and Tippin but could not remember the exact words said by either party. Sergeant Fetters confirmed that Tippin gave consent without any

4

threats or promises made by either Detective Paine or Sergeant Fetters. Sergeant Fetters testified that as they walked with Tippin to her room, he reiterated to Tippin that she had granted consent so that it could be recorded by Officer Sepulveda's camera in the kitchen. Sergeant Fetters confirmed Detective Paine's statement that Tippin showed no resistance while unlocking her door. Sergeant Fetters also confirmed Detective Paine's testimony that Tippin began dry heaving while the search was being conducted.

According to Sergeant Fetters, he attempted to confirm Tippin's consent to make sure it was recorded on Officer Sepulveda's camera. Sergeant Fetters did not recall Tippin's exact words but testified that Tippin gave her consent to search her room. Sergeant Fetters then stated he wanted to confirm Tippin's consent on video because he was not sure if Officer Sepulveda was behind him during the initial granting of consent. Sergeant Fetters said that Tippin nodded her head when Sergeant Fetters confirmed her consent.

The trial court admitted two video clips recorded by Officer Sepulveda's body camera. The second video which captures Tippin coming inside the house does not have any audio. The court made note of a conversation between Sergeant Fetters and Detective Jimmy McDonald in which they discuss what would happen if Tippin did not grant her consent to search her room. Sergeant Fetters also mentions in the video they could obtain a search warrant if Tippin did not provide consent. The State also submitted State exhibit number two which shows Tippin's first encounter with Victoria P.D. on May, 14, 2014.[2]

---

[2] The video was recorded from the dash camera of Detective Kellye Gibbs' patrol vehicle.

Finally, the State called Kellye Gibbs, detective for Victoria P.D., to testify. Detective Gibbs conducted the traffic stop of Tippin. Detective Gibbs confirmed Detective Paine's testimony on Tippin's first encounter with Victoria P.D. Detective Gibbs testified that she decided to deploy the drug-sniffing dog because she suspected Tippin had narcotics on her after Tippin became nervous when asked about narcotics. Detective Gibbs stated she did not have to deploy the dog because Tippin admitted to having marihuana on her person and in her vehicle. Detective Gibbs confirmed that Tippin was offered an opportunity to become an informant which Tippin ultimately declined. Tippin was not arrested that night, but Detective Gibbs did notify her that she could be charged for the marihuana. On cross-examination, Detective Gibbs confirmed that Tippin did not initially provide consent to search her vehicle.

Tippin testified on her own behalf. The questioning was limited to the issue of consent. Tippin testified that she paid rent and maintained a room that was separate from her uncle's room. She maintained a lock on the door to keep her room private. Tippin testified that Detective Paine and Sergeant Fetters told her that Cantu had already consented to a search of the house and that Tippin needed to unlock her room. Tippin said she was given no choice. Tippin stated she was never asked for her consent to search her room, and she never had any desire to give Victoria P.D. consent to search her room. Based on her previous encounter with Victoria P.D., Tippin said she felt intimidated and scared by the situation. Tippin stated she felt pressured by the officers due to their attempt at making Tippin an informant. Tippin stated that no officer said anything to her as they walked inside the house. Tippin said she began to cough on the way to her room, and then felt more ill after unlocking her door.

6

On cross-examination, Tippin restated that she denied consent to search her vehicle during the traffic stop and that she knew she had the right to refuse consent. Tippin said she later granted consent during the traffic stop because she felt she had no choice after Detective Gibbs threatened to deploy a drug sniffing dog. Tippin later stated she did not know she had the right to refuse an officer's search, but she knew she did not like anyone being in her vehicle. When asked why she did not refuse a search of her room, Tippin said the officers told her Cantu consented to a search of the whole house. Tippin reiterated that she felt she had no choice but to let them search her room due to the officers stating Cantu had consented to the whole house being searched. When asked why she continued to go towards her home if she had felt intimidated, Tippin replied that she had nowhere else to go but her home.

After hearing this evidence, the trial court denied Tippin's motion to suppress. This appeal followed.

## II. DISCUSSION

### A. Standard of Review

"A trial court's motion to suppress ruling is generally reviewed for abuse of discretion." *Ford v. State*, 26 S.W.3d 669, 672 (Tex. App.—Corpus Christi 2000, no pet.) (citing *Oles v. State*, 993 S.W.2d 103, 106 (Tex. Crim. App.1999)). If the trial court does not make explicit findings of fact then the reviewing court "infers the necessary factual findings that support the trial court's ruling if the record evidence (viewed in the light most favorable to the ruling) supports these implied fact findings." *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). The trial court's determination of historical facts

7

is given almost total deference. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002).

The same amount of deference is given to a trial court's ruling on "mixed questions of law and fact" relying on an evaluation of credibility and demeanor of the witnesses. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). When the trial court's ruling of "mixed questions of law and fact" does not rely on the evaluation of credibility and demeanor, then we must review the trial court's ruling de novo. *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013). Due to the fact-intensive nature of issues of consent, "a trial court's finding of voluntariness must be accepted on appeal unless it is clearly erroneous." *Meekins v. State*, 340 S.W.3d 454, 460 (Tex. Crim. App. 2011).

## B.    Applicable Law

"No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West, Westlaw through 2017 1st C.S.). Both the Constitution of the United State and of the State of Texas require a warrant before searching the place or possessions of a person. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. A search conducted with authorized consent is an exception to the requirements of the Fourth amendment of the United States. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). "But the Fourth and Fourteenth Amendments require that [] consent not be coerced, by explicit or implicit means, by implied threat or covert force." *Meekins*, 340 S.W.3d at 458–59 (quoting *Schneckloth*, 412 U.S. at 228). After a defendant meets her initial burden of proving that a search and seizure occurred

8

without a warrant, the burden then shifts to the State to prove the search and seizure was reasonable. *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). The State must prove by clear and convincing evidence that consent was voluntarily given. *State v. Ibarra*, 953 S.W.2d 242, 245 (Tex. Crim. App. 1997).

## C.  Analysis

### 1.  Whether Consent was Granted by Tippin

By her first issue, Tippin claims that the State failed to show that she granted consent to search her room. Tippin points to the stark contrast between her testimony and that offered by the State's witnesses, as well as the lack of specificity in the testimony of Detective Paine and Sergeant Fetters regarding whether consent was requested and granted.

The State argues that consent was granted by Tippin. The State points to the testimony of Detective Paine and Sergeant Fetters as well as the actions by Tippin as proof that consent was asked for and granted.

The trial court did not make any explicit findings of fact when denying Tippin's motion to suppress. Without any express findings, we must infer the necessary factual findings that would support the trial court's ruling. *See Garcia-Cantu*, 253 S.W. 3d at 241. During a motion to suppress hearing, the trial court can choose to believe or disbelieve any or all of a witness's testimony. *Amador*, 275 S.W.3d at 878; *Garcia–Cantu*, 253 S.W.3d at 241. Because the trial court did not issue any express findings, it is implied that the trial court chose to believe the testimony of Detective Paine and Sergeant Fetters and to disbelieve the testimony provided by Tippin. Tippin stated she was not asked for her consent and never had any desire to let the officers search her room. This is in direct

9

contrast to the testimony of Detective Paine and Sergeant Fetters who stated consent was asked for and given by Tippin. Based on the trial court's ruling, the trial court disbelieved this portion of Tippin's testimony.

Due to the findings of fact being almost entirely borne out of the evaluation of the witness's credibility and demeanor, we must afford the trial courts findings "almost total deference." *Guzman*, 955 S.W.2d at 89. In the instant case, the implied findings of fact made are supported by the record. *See State v. Cullen*, 195 S.W.3d 696, 398 (Tex. Crim. App. 2006) (stating that implicit findings must be verified by the record).

Tippin argues that the lack of specificity in the recollection of Detective Paine and Sergeant Fetters is indicative of the lack of consent granted by Tippin. However, the inability of a witness to remember the exact words used only affects the weight of the witness's testimony, not the admissibility. *Gruber v. State*, 812 S.W. 2d 368, 371 (Tex. Crim. App.—Corpus Christi 1991 pet. ref'd). The trial court is, "in the best position to judge the credibility and demeanor of the witnesses at a pretrial suppression hearing." *Cullen*, 195 S.W. 3d at 698. The trial court must have found Detective Paine and Sergeant Fetters credible being that the motion to suppress was denied. Accordingly, we overrule Tippin's first issue.

### 2. Whether Consent was Granted Freely and Voluntarily

By her second issue, Tippin claims that even if she granted consent, it was not granted freely and voluntarily. Tippin points to multiple facts including her dry heaving, her previous encounter with Victoria P.D., and the amount of officers present at her house as proof that she did not freely and voluntarily grant consent.

10

The State contends that Tippin's grant of consent was voluntary. As proof that consent was voluntarily granted, the State points to the lack of threats or promises made by Detective Paine or Sergeant Fetters, the dry heaving by Tippin occurring after consent was granted, and Tippin's understanding that she could refuse to grant consent.

Whether consent was granted voluntarily is a question of fact to be determined from the totality of the circumstances. *Meeks v. State*, 692 S.W.2d 504, 510 (Tex. Crim. App. 1985); *Schneckloth*, 412 U.S. at 227. We must give deference to the trial court's findings of fact, but we review the application of law de novo. *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000).

Tippin brings a number of claims alleging her consent was not granted freely or voluntarily. Yet, Tippin's counsel has not cited any case law showing that Tippin's grant of consent was "the product of duress or coercion." See *Schneckloth*, 412 U.S. at 227. *Meekins* lays out factors that could amount to coercion such as the display of a weapon, physical touching, or threats and promises being made to induce consent. *Meekins*, 340 S.W.3d at 464. The list is not exhaustive but *Meekins* suggests the type of factors that reflect coercion. *Id.* None of the factors in *Meekins* are present in the instant case. There were no weapons displayed at the time of Tippin's grant of consent. Tippin was never physically touched in order to induce consent. Both Detective Paine and Sergeant Fetters testified they did not promise or threaten Tippin when she granted her consent. Tippin did not provide any testimony that would refute any of these facts.

Tippin points to her dry heaving as proof that her consent was not granted freely and voluntarily. Both Detective Paine and Sergeant Fetters stated she began to dry

11

heave after Tippin unlocked her room. State's exhibit number one confirms this as Tippin can be seen passing her kitchen and then later dry heaving after unlocking her room.

Tippin also claims that because Victoria P.D. made a "threat" to use a drug sniffing dog around her vehicle after she denied consent to search, she felt she had no choice but to grant consent to search her room. However, the prospect of bringing a dog to sniff her room was never brought up when Tippin granted consent to search her room. The possibility of bringing a dog was assumed by Tippin. In *U.S. v. Raines*, it was not impermissibly coercive to state that a warrant could be applied for if consent was not granted. 536 F.2d 796, 801 (8th Cir. 1976). In *Beaupre v. State*, consent was not deemed involuntary when the grant of consent was made after the person giving consent was made privy to the possibility that law enforcement could obtain a search warrant. 526 S.W.2d 811, 815 (Tex. Crim. App. 1975). Neither Detective Paine nor Sergeant Fetters proposed getting a warrant or drug dog at the house. Tippin's previous encounter with Victoria P.D. cannot be viewed as to have coerced Tippin's later grant of consent at a different location.

If Tippin's previous encounter with Victoria P.D. is indicative of anything it is that Tippin knew she could deny consent to a search. According to the testimony of Detective Paine and Sergeant Fetters, they also indicated to Tippin that she could refuse consent. Warning an individual of their right to refuse consent is not necessary for a voluntary grant of consent. *Meeks*, 692 S.W.2d at 510. However, it is of evidentiary value when determining whether consent was granted voluntarily. *Id.*

Tippin points to the number of officers present as evidence that she did not grant consent freely and voluntarily. Only Detective Paine and Sergeant Fetters questioned

12

Tippin outside of her house when she granted consent. In *Meekins*, more than one officer was present at the time of a valid grant of voluntary consent. 340 S.W.3d at 456; *Reasor v. State*, 12 S.W.3d 813, 819 (Tex. Crim. App. 2000). The number of officers present is not dispositive of a valid grant of consent but could be considered under a review of the totality of the circumstances.

After considering the totality of the circumstances and viewing the evidence in the light most favorable to the prevailing party, we conclude the trial court did not abuse its discretion in impliedly finding that the State proved by clear and convincing evidence that Tippin granted consent to search freely and voluntarily. *Schneckloth*, 412 U.S. at 228. Accordingly, we overrule Tippin's second issue.

### III. CONCLUSION

We affirm the judgment of the trial court.

**/s/ Rogelio Valdez**
ROGELIO VALDEZ
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed this
2nd day of August, 2018.

13