**AFFIRM; and Opinion Filed December 4, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-17-00265-CR
No. 05-17-00266-CR

**MARIO MUNGUIA-ZARATE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 2**
**Dallas County, Texas**
**Trial Court Cause Nos. F-13-23773-I, F-13-23774-I**

## MEMORANDUM OPINION

Before Justices Bridges, Francis, and Lang-Miers
Opinion by Justice Lang-Miers

Appellant Mario Munguia-Zarate was charged in two related cases with (1) possession of cocaine with intent to deliver and (2) possession of methamphetamine with intent to deliver. Prior to trial, appellant filed a pre-trial motion to suppress what he claimed was illegally obtained evidence. After conducting a hearing, and taking the arguments made and the authorities relied on by the parties under advisement, the trial court denied the motion to suppress. Then appellant entered pleas of guilty to both offenses, waived a jury, and judicially confessed to the offenses. Pursuant to a plea-bargain agreement, the trial court sentenced appellant to confinement for ten years in both cases, but suspended punishment and put appellant on community supervision for ten years in both cases. In the methamphetamine case the trial court also assessed a fine of $3000.

In four issues, appellant challenges the denial of the motion to suppress and argues he was denied his right to confrontation. We affirm.

## The Hearing on the Motion to Suppress

*Evidence Adduced*

On January 28, 2013, the Garland police received a call that a Hispanic male in a black Suburban, license plate AR09290, was selling drugs in the parking lot of a strip mall at 3460 West Walnut Street in Garland, Texas. Three Garland police officers – Aristina Lyda, Jesse Kohls, and Curtis Russell – were dispatched to that location.

Lyda testified that when she arrived at the location she saw the Suburban parked in a parking spot in the lot. There was a Hispanic male, who Lyda identified as appellant, in the driver's seat of the Suburban. There was no one else in the vehicle.

Lyda testified that she has some background in Spanish and was capable of basic communications:

> I took Spanish in high school, community college, high school, community college, intermediate certificate through the police academy. I worked in our jail for four years, so I had to learn some Spanish and speak some Spanish in the jail, and then also just basic patrol experience working day to day activities.

Lyda was not, however, fluent in Spanish.

Lyda approached the Suburban on driver's side and spoke with appellant in Spanish.[1] She asked appellant what he was doing; appellant replied that he was waiting for his wife, who was in a store. Lyda next asked for identification; appellant produced his driver's license.

Lyda then asked appellant to exit his vehicle and come to the back of the vehicle. Lyda explained that she did this because she was short and could not see into the vehicle; she considered

---

[1] Lyda testified that she may have spoken to appellant in English at some point, but she could not be sure.

this a security issue for her safety. Appellant complied with her request. Lyda again asked appellant what he was doing, and appellant again replied that he was waiting for his wife.

Lyda asked appellant if she could look in his vehicle. Lyda testified that she asked to look in Suburban because of the narcotics complaint. Appellant indicated that he did not understand what Lyda was asking. Lyda testified that up until that point appellant had understood all of her questions.

Lyda admitted, on cross-examination, that she did not witness appellant doing anything illegal at the time she approached the vehicle. Lyda also testified that appellant was not free to leave because the police had not finished the investigation into the narcotics complaint.

During the time that Lyda was speaking with appellant, Kohls was on the passenger side of vehicle as the "cover officer" to make sure the driver was not reaching for a weapon.[2] Kohls testified that Lyda first spoke English, then Spanish to appellant. They had a conversation in Spanish but, because Kohls does not speak Spanish, Kohls could not understand it. Kohls also did not hear much of the conversation because he was on the other side of the car. Kohls testified, however, that Lyda and appellant seemed to be communicating back and forth. Kohls saw appellant give Lyda his identification when she asked for it.

Russell arrived to find Kohls and Lyda talking to appellant at the back of the vehicle. Russell testified that he did not see appellant doing anything illegal. Russell testified that appellant was not under arrest at this time and was free to leave.

Lyda explained to Russell that appellant didn't speak English and a translator was needed. Kohls testified that the call notes reflected that the officers tried to find a Spanish speaking officer but one was not available. As Kohls testified: "If we have a problem and we attempt to find a

---

[2] Kohls did not recall seeing anything illegal in plain view in vehicle. There was no evidence of any weapon being found either on appellant's person or in the Suburban.

Spanish speaking officer and there's not one available, we're going to find somebody that can help translate [for] us so we can solve that problem."

Russell saw a taqueria in the parking lot. He went there and found Juan Mendoza, a Hispanic male. Mendoza told Russell that he spoke both Spanish and English. Russell was able to communicate with Mendoza in fluent English.

Russell described what he told Mendoza the police needed from him: "I told . . . (Mendoza) . . . that we were dispatched there on a narcotic complaint so he understood why I needed him to translate. I explained to him that I needed him to translate a consent to search the suspect's vehicle." Mendoza said he understood. Russell then gave Mendoza a card with the *Miranda*[3] warnings written both in English and in Spanish. Mendoza read the Spanish part of the *Miranda* warning off the card to appellant.

Russell testified that appellant seemed to understand the *Miranda* warnings that Mendoza gave him. Appellant waived his rights and agreed to talk to Mendoza. When asked for consent to search, appellant "said there was nothing illegal in the car, he was just there waiting for his wife."

Russell asked Mendoza to explain again to appellant that the police were asking for consent to search the vehicle. Mendoza read that part again and this time appellant agreed, though he said again that there was nothing illegal in his vehicle. Russell heard appellant say "si," which he knew was "yes" in Spanish.[4] Appellant gave his consent to Mendoza who, in turn, communicated appellant's consent to Russell. It never appeared to Russell that appellant did not understand Mendoza.

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966); *see also* TEX. CODE CRIM. PROC. art. 38.22 §2(a).

[4] Russell testified that he was taught basic Spanish at the police academy and can understand some Spanish.

Russell testified that he pointed at appellant's vehicle and said "si?" Appellant shook his head and said "yes." Russell understood appellant to be agreeing that the police could search his vehicle.

Russell testified that, other than the fact that Mendoza was the person he contacted that day to translate, he did not know Mendoza. This was the only instance in which Russell had used Mendoza as a translator. Russell testified that he did not know where Mendoza was from, did not know his educational background, and did not know if he had a criminal record. As a practical matter, Russell did not know exactly what Mendoza had said to appellant.

After Mendoza communicated appellant's consent to Russell, Russell instructed Kohls to search the vehicle. During the search Kohls found the following: "two . . . vitamin bottles, pill bottles . . . one of which contained approximately 30 crack rocks that were individually wrapped in tin foil, and the other bottles contained approximately 18 small baggies of powder cocaine." After finding those drugs, Kohls informed Russell. Appellant was arrested and detained in the back of Kohls' squad car. Kohls continued the search, finding "a dirty old sock" in the center console which contained approximately five baggies of methamphetamine along with more powder cocaine. He also found more powder cocaine in the glove box. Kohls seized the drugs and kept them until a narcotics officer arrived.

Because appellant had been found in possession with a "substantial amount of narcotics individually wrapped for sale," the officers called Rafael Perez, a narcotics investigator with the Garland Police, and asked Perez to come to their location.[5] When Perez arrived, he first spoke to the officers to get more information. Perez also spoke with appellant.

---

[5] Perez testified that Russell called him directly because of the narcotics that had been found in appellant's vehicle, not because Perez was a Spanish speaker.

Perez verified that appellant had given consent for the search of the Suburban. When Perez asked appellant if he had given permission to enter his car, appellant said, "Yes, yes," adding that "when it's an officer, one shouldn't refuse, right?" An in car video of Perez speaking with appellant in the back of Kohls' police car, as well as an English translation of that conversation, was introduced into evidence. The translation of the video shows that appellant confirmed that he gave Mendoza permission to search the vehicle.

Perez testified that appellant also said: "Well, if you like, you can search it again." Perez did search the Suburban again, but nothing more was found. Perez took possession of the narcotics and appellant was transported to the Garland jail.

### Arguments of Counsel

In arguing that the trial court should grant appellant's motion to suppress, defense counsel argued that valid consent was not given. Defense counsel also argued that Mendoza, who was not called as a witness, should have testified as to the exact content of his conversation with appellant. Defense counsel further argued that appellant had not been free to leave and was detained despite the fact that the police did not observe any illegal activity.

The State responded that the video showed appellant giving his consent to search twice. The State recognized that appellant did say "I can't refuse when it's an officer. One shouldn't refuse, right?" The State argued, however, that the law does not require a police officer to advise a suspect of his right to refuse before obtaining a valid consent. The State also argued that appellant had been read his *Miranda* rights twice that day. With respect to Mendoza, the State argued that "the officers used what was at hand, and that was someone at a taqueria who spoke English and Spanish that could come translate and help officers investigate this drug complaint."

***Trial Court's Findings and Ruling***

In denying the motion to suppress, the trial court said as follows:

[THE COURT] Generally I will find that the original detention was lawful while the officers continued their investigation of the complaint, that the consent subsequently acquired through the interpreter, if you will, was valid and the defendant's consent to search was freely and voluntarily given and search, therefore, was legal and the securing of a citizen interpreter was basically a matter of exigent circumstances.

## **Appellant's Allegations on Appeal and State's Response**

Appellant claims that the trial court erred in denying the motion to suppress because (1) the initial entry and search of appellant's vehicle was conducted without a warrant or probable cause; (2) the arresting officers did not have the appellant's unequivocal consent to search the vehicle; (3) there were no exigent circumstances which would authorize a warrantless search since the officer had no reason to believe that evidence would be destroyed or removed or that he was in any apparent danger; and (4) the State did not present the translator at the hearing violating appellant's right of confrontation.

The State, in its response, concedes appellant's first and third issues, *i.e.*, that the police lacked probable cause to search and that there were no exigent circumstances to justify the search.

The State argues, however, that appellant's second issue should be overruled and the denial of the motion to suppress affirmed because appellant gave valid consent for the search of his vehicle. Although the State concedes issues one and three, it contends that appellant's consent was itself sufficient to justify denial of the motion to suppress. The State also argues that we should overrule appellant's fourth issue and affirm because the trial court did not err by not requiring the State to call Mendoza as a witness.

We conclude that the trial court did not abuse its discretion by denying the motion to suppress and by not requiring Mendoza to testify. We overrule issues two and four and affirm.

## Standard of Review

We review a trial court's ruling on a motion to suppress for an abuse of discretion, using a bifurcated standard. *See Maxwell v. State,* 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's determination of historical facts, and review de novo the trial court's application of the law. *Maxwell,* 73 S.W.3d at 281; *Guzman,* 955 S.W.2d at 88–89.

When the trial court makes findings of fact, as it did in this case,[6] we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Kelly,* 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). The trial court's legal conclusions are reviewed de novo unless its explicit fact findings supported by the record are also dispositive of the legal ruling. *Id.* We will uphold a trial court's ruling on a motion to suppress if it is correct under any theory of law applicable to the case, even if the trial court did not rely on that theory in making its ruling. *State v. Copeland,* 501 S.W.3d 610, 612–13 (Tex. Crim. App. 2016).

## Consent to Search

In appellant's second issue, he claims that the arresting officers did not have the appellant's "unequivocal" consent to search his vehicle.

### Consent is an Exception to a Warrant

A warrantless search is considered "per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). One exception is a search that is conducted pursuant to consent. *Id.; Meekins v.*

---

[6] The trial court dictated its main findings to the court reporter in announcing its ruling on the motion to suppress. The trial court stated that it would make more detailed findings "on request." Nothing in the record reflects that either party asked the trial court to make more explicit findings than those dictated to the court reporter.

*State*, 340 S.W.3d 454, 458 (Tex. Crim. App. 2011); *Carmouche v. State,* 10 S.W.3d 323, 331 (Tex. Crim. App. 2000).

The validity of a consent to search is a question of fact to be determined from all the circumstances. *Meekins*, 340 S.W.3d at 458. To prove valid consent, the prosecution must show by clear and convincing[7] evidence from the totality of the circumstances that consent was freely and voluntarily given. *State v. Ibarra*, 953 S.W.2d 242, 243 (Tex. Crim. App. 1997); *see also Schneckloth*, 412 U.S. at 223. Testimony by law enforcement officers that no coercion was involved in obtaining a defendant's consent is evidence of the consent's voluntary nature. *Allridge v. State*, 850 S.W.2d 471, 492 (Tex. Crim. App. 1991).

The Fourth Amendment does not require, as a condition of giving voluntary consent to search, that the defendant, even one who has been lawfully detained, be informed that he is free to go. *Ohio v. Robinette,* 519 U.S. 33, 39-40 (1996). Nor do law enforcement officers have a duty to warn a defendant that he has a right to refuse consent to search. *Schneckloth*, 412 U.S. at 234; *Johnson v. State*, 68 S.W.3d 644, 653 (Tex. Crim. App. 2002) (holding that although a police officer's failure to inform the accused that he can refuse consent is "a factor to consider, the absence of such information does not automatically render the accused's consent involuntary. Nor is consent rendered involuntary merely because the accused is under arrest.").

*Review of Consent Issues*

Issues of consent are "necessarily fact intensive" and, as a result, "a trial court's finding of voluntariness must be accepted on appeal unless it is clearly erroneous." *Meekins*, 340 S.W.3d at 460. The prevailing party in the trial court "is afforded the strongest legitimate view of the evidence

---

[7] Although the federal constitution only requires the State to prove the voluntariness of consent by a preponderance of the evidence, the Texas Constitution requires the State to show by clear and convincing evidence that the consent was freely given. *State v. Ibarra*, 953 S.W.2d 242, 245 (Tex. Crim. App. 1997).

and all reasonable inferences that may be drawn from that evidence." *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008).

*Analysis*

The evidence at the hearing on the motion to suppress showed that Lyda spoke to appellant in basic Spanish. Appellant understood Lyda's requests to (1) explain his presence at that location, (2) produce identification, and (3) exit his vehicle. When appellant said he did not understand Lyda's request to search his vehicle, the officers asked for a Spanish-speaking officer to be sent to the location; however, no Spanish speaking officers were available. Russell found a Spanish speaker, Mendoza, who also spoke fluent English, at a nearby taqueria. Russell used Mendoza as an interpreter to (1) convey to appellant, in Spanish, his *Miranda* rights and (2) ask if appellant would consent to a search of his vehicle. Russell directed Mendoza to ask appellant in Spanish if he would consent to a search of his vehicle. Mendoza did so. Russell knew basic Spanish from the academy and testified that Mendoza told him that appellant consented to the search. Russell heard appellant say, "si," meaning "yes." Rather than just taking Mendoza's word for appellant's consent, Russell pointed at the vehicle and said, "si?" Russell testified that appellant shook his head and said "yes."

Further evidence that Mendoza asked appellant for his consent to search his vehicle, and that appellant understood this request, is shown by the testimony that appellant told Mendoza twice, in response to Mendoza's request to search appellant's Suburban, that there was nothing illegal in his vehicle.

Additionally, the subsequent video recording and translation show that appellant confirmed to Perez that he had previously given consent to Russell through Mendoza.

This testimony at the hearing on the motion to suppress provides clear and convincing evidence that appellant voluntarily gave Russell consent to search his vehicle. *See Mancilla v.*

*State*, No. 05-14-01427-CR, 2016 WL 3877400 (Tex. App.—Dallas July 13, 2016, no pet.) (mem. op., not designated for publication) (upholding a trial court's denial of a defendant's motion to suppress where the officer used the defendant's child as an interpreter to ask for consent to search, the defendant said, "si," and a Spanish-speaking officer subsequently confirmed that it was a consensual search). We conclude that the trial court did not abuse its discretion by finding that appellant's consent, acquired through the interpreter, was freely and voluntarily given and valid. We overrule this issue.

## Denial of the Right of Confrontation

In his fourth issue, appellant claims that his rights to confrontation were violated by the State's failure to present the testimony of Juan Mendoza at the hearing on the motion to suppress.

### *Confrontation*

The Sixth and Fourteenth Amendments of the United States Constitution guarantee a criminal defendant a right "to be confronted with the witnesses against him." U.S. CONST. amend. VI, XIV; *see also* TEX. CONST. art. I, § 10. The right of confrontation includes the right of cross-examination. *Davis v. Alaska*, 415 U.S. 308, 315 (1974); *Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996). The Constitution also guarantees a defendant the right of compulsory process. U.S. CONST. amend. VI, XIV; *see also* TEX. CONST. art. I, § 10.

### *Preservation*

Preservation requirements apply to confrontation complaints. *Reyna v. State*, 168 S.W.3d 173, 179–80 (Tex. Crim. App. 2005) (overruling the defendant's confrontation issues because he did not preserve error related to that issue at trial); *Deener v. State*, 214 S.W.3d 522, 527 (Tex. App.—Dallas 2006, pet. ref'd) (holding that the right of confrontation is a forfeitable right that must be preserved by a timely and specific objection at trial); TEX. R. APP. P. 33.1. To preserve error, a defendant must make his complaint to the trial court by a timely request, objection, or

motion that states the grounds for the ruling sought with sufficient specificity to make the trial court aware of the complaint. TEX. R. APP. P. 33.1(a). A defendant's failure to object on confrontation grounds at trial waives that complaint for appellate review. *See Paredes v. State*, 129 S.W.3d 530, 535 (Tex. Crim. App. 2004) (defendant failed to preserve his confrontation complaint for appellate review when his trial objection was solely on hearsay grounds).

Appellant's confrontation issue is based on the absence of Mendoza from the hearing on the motion to suppress. There is no evidence in the record that appellant attempted to subpoena Mendoza as a witness and was denied his right to compulsory process. Appellant did not object to Mendoza's absence on confrontation grounds. Nor did appellant object on these grounds when Russell testified as to what Mendoza told him after speaking with appellant. The only mention appellant made of confrontation was in argument to the trial court where defense counsel said that the State did not "present (Mendoza) as a witness for us to cross examine him." We conclude this was insufficient to preserve his confrontation claim for appeal.

### No Reversible Error

Nevertheless, and even if appellant had preserved this issue for our review, and even if we were to conclude that there had been a confrontation violation, we would not conclude there was reversible error.

Appellant claims that confrontation was implicated in this case because Mendoza's testimony as to whether appellant gave his consent is testimonial in nature. Further, appellant claims that Mendoza's absence from the suppression hearing make him "unavailable" as a witness for confrontation purposes. Appellant relies on *Crawford v. Washington*, 541 U.S. 36, 68-9 (2004) which provides that testimonial out-of-court statements by a witness absent from trial are barred unless (1) the witness is unavailable to testify at trial, and (2) the defendant had a prior opportunity to cross-examine the witness.

*Constitutional Harm Analysis*

Error in admitting evidence in violation of a defendant's right to confront the witnesses against him is constitutional error, which requires reversal unless the reviewing court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. TEX. R. APP. P. 44.2(a); *Langham v. State*, 305 S.W.3d 568, 582 (Tex. Crim. App. 2010).

When determining whether a confrontation error is harmless, we consider: (1) how important the out-of-court statement was to the State's case; (2) whether the out-of-court statement was cumulative of other evidence; (3) the presence or absence of evidence corroborating or contradicting the out-of-court statement on material points; and (4) the overall strength of the prosecution's case. *Langham*, 305 S.W.3d at 582. We must be satisfied, to a level of confidence beyond a reasonable doubt, that the error did not contribute to the conviction. *Id.*

Mendoza's statements to Russell, concerning what appellant said to him, were important to the State's case. Without valid consent, there was no basis on which the officers could search appellant's vehicle. It was Mendoza who asked appellant for his consent and who conveyed appellant's consent to Russell. This factor weighs in favor of appellant.

Mendoza's statements to Russell were cumulative of other evidence. Evidence at the hearing showed that appellant told Investigator Perez, after his arrest, that he had consented to the search. Perez explained to appellant that he was a narcotics investigator and again read appellant his *Miranda* rights in Spanish. Appellant agreed to answer Perez's questions. The certified interpretation of their conversation reflects the following:

> [PEREZ] Well the officers . . . when they asked you about the [U/I][8] the other man, that you gave him permission to enter the car, did you tell him yes?

> [APPELLANT] Yes, yes, because anyway, I can't refuse, when it's an officer, one shouldn't refuse, right?

---

[8] On the transcription of the translation, the term [U/I] is listed as an abbreviation for "unintelligible."

[PEREZ] Uh huh.

[APPELLANT] The authority comes first and that's it. Whatever God says.

*

[APPELLANT] [U/I] Well if you'd like, you can search it again . . . That is . . .

[PEREZ] I'm going to search more. Yes. I'm going to search more. I just want to know, I'm asking you the questions that I need to. You gave them the right to search the car, you told them yes, you gave them permission.

[APPELLANT] Yes.

Appellant does not dispute that he told Perez that he had given prior consent to search his vehicle or that he gave Perez consent to search his vehicle a second time. This factor weighs in favor of the State.

As a result, there was ample evidence to corroborate Mendoza's statements to Russell and no evidence that contradicted those statements. It never appeared to Russell that appellant did not understand the Spanish that Mendoza was speaking to him. Further, Russell took the precaution, in his limited Spanish, to try and confirm what appellant had told Mendoza. Russell testified that when Mendoza informed him that appellant said, "Yes, you can search the vehicle," Russell pointed at the Suburban and asked "si?" and appellant shook his head and said, "yes." It was only then that the police proceeded with a search of appellant's vehicle. Further evidence that Mendoza asked appellant for his consent to search his vehicle, and that appellant understood this request, is shown by the testimony that appellant told Mendoza twice, in response to Mendoza's request to search appellant's Suburban, that there was nothing illegal in his vehicle. This factor weighs in favor of the State.

Additionally, and overall, the prosecution's case was strong. In addition to the evidence detailed above, there is nothing in the record to show that Mendoza did not ask appellant for his

consent, mis-informed appellant about his rights, incorrectly interpreted appellant's statements, or that appellant misunderstood Mendoza. This factor weighs in favor of the State.

When all of these factors are considered, we conclude that, even if Mendoza's absence as a witness at the hearing on the motion to suppress was a violation of appellant's rights to confrontation, Mendoza's absence did not contribute to appellant's conviction.

*Right to Refuse Consent*

Appellant also argues that his consent was not valid because (1) he was not told that he had the right to refuse consent and (2) there was evidence that he thought he could not refuse consent. However, as noted above, it was not essential for the officers to tell appellant that he could withhold his consent. *Johnson,* 68 S.W.3d at 653. Nor is there any evidence that appellant was told he could not refuse consent because the request was made by a law enforcement officers. And because appellant refused his consent the first time Mendoza asked for it, saying "there was nothing illegal in the car, he was just there waiting for his wife," appellant appears to have known that he could refuse his consent. We overrule this issue.

## Conclusion

Appellant argues in issues one and three that there was no warrant, no probable cause and no exigent circumstances to justify the search of his vehicle, that evidence that resulted from that search should be suppressed and that the trial court erred by denying the motion to suppress. The State conceded the search was not justified on those grounds. And in issue two appellant also argued that the search was not justified based on consent as another reason the trial court erred in denying the motion to suppress. In response to issue two, however, the State argued that regardless of issues one and three, the search was justified based upon appellant's consent, that his consent was a separate reason for affirming the denial of the motion to suppress and that issue two should be overruled.

We agree with the State and conclude that, although the State concedes issues one and three, the trial court did not abuse its discretion by denying the motion to suppress and overrule issue two. Additionally, for the reasons stated earlier, we also overrule issue four. As a result, we affirm.


/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE


DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

170265F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MARIO MUNGUIA-ZARATE, Appellant

No. 05-17-00265-CR  V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 2, Dallas County, Texas
Trial Court Cause No. F-1323773-I.
Opinion delivered by Justice Lang-Miers.
Justices Bridges and Francis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 4th day of December, 2018.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MARIO MUNGUIA-ZARATE, Appellant

No. 05-17-00266-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 2, Dallas County, Texas
Trial Court Cause No. F-1323773-I.
Opinion delivered by Justice Lang-Miers.
Justices Bridges and Francis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 4th day of December, 2018.