**Affirmed and Majority and Concurring Memorandum Opinions filed August 24, 2021.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-20-00409-CR

---

### DERRICK GLEN BLACKSHIRE II, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the County Court at Law No. 3
Fort Bend County, Texas
Trial Court Cause No. 18-CCR-205657**

---

## M A J O R I T Y   M E M O R A N D U M   O P I N I O N

After the trial court denied appellant Derrick Glen Blackshire II's motion to suppress evidence, he pleaded guilty to the Class A misdemeanor offense of possession of a dangerous drug.[1] Following a traffic stop, a Stafford Police Officer discovered narcotics and a handgun in appellant's truck, which appellant contends

---

[1] *See* Tex. Health & Safety Code § 483.041(a).

resulted from an illegal warrantless search. In four issues, appellant asserts that the trial court abused its discretion in denying his motion to suppress because: (1) the evidence seized was not in plain view; (2) the officer seizing the evidence was not acting as appellant's "agent" in conducting the search; and (3) appellant did not give the officer express or implied consent to enter the vehicle.

We hold that the trial court's ruling that appellant impliedly consented to the warrantless entry of the vehicle is supported by the record and is not clearly erroneous. Concluding that we need not reach, or appellant did not preserve, the remaining issues, we affirm.

## Background

After a traffic stop, appellant was charged by information with the offenses of possession of a controlled substance, unlawfully carrying a weapon, and possession of a dangerous drug. He filed a motion to suppress the evidence seized, claiming the officer conducted an illegal search of his vehicle. The court heard appellant's motion to suppress, and the following evidence was presented.

Officer Aaron Clark, formerly with the Stafford Police Department ("SPD"), was the only witness to testify. He stopped appellant's pick-up truck because it displayed no front license plate and the registration was expired. After speaking with appellant, Officer Clark determined that appellant did not have a valid driver's license. The officer cited appellant for an expired registration and for driving without a valid license. Appellant exited the vehicle at the officer's request, and Officer Clark took custody of the keys. Because appellant could not legally drive the vehicle, Officer Clark told him that, pursuant to SPD policy, he could either call a licensed driver to pick up the vehicle or else it would have to be towed. Appellant was unable to reach a licensed driver, so Officer Clark called for a tow truck.

2

Although appellant was free to leave the scene at that point, he remained present. Officer Clark conducted another traffic stop while waiting for the tow truck to arrive. Appellant retrieved a jacket or sweater from the interior of his truck by reaching through a window, and Officer Clark did not stop him from doing so. When the tow truck arrived, appellant approached the truck and opened the door slightly. Officer Clark closed the door, asked appellant to "back up," and told him that he could not get back into the truck. Appellant stepped back. Officer Clark described appellant's demeanor as "agitated." Officer Clark testified that he would not let appellant back into the vehicle because on prior occasions drivers had locked themselves inside their vehicles and prevented the tow. Additionally, Officer Clark was concerned there could have been a weapon in the truck, and he did not want to give appellant unfettered access to the truck out of concern for officer safety.

Appellant said that he needed to get some papers out of the truck. Officer Clark did not mind if appellant retrieved something from the vehicle but explained that he, Officer Clark, would get the papers for him. Appellant did not object and said he "didn't know what he needed, he just needed to check." He then stood by and watched as the officer entered the vehicle. Appellant did not tell Officer Clark not to help him get the papers. According to Officer Clark, when he entered the truck, he did so to assist appellant in retrieving papers, not because he had probable cause to search: "I wasn't conducting a search on the vehicle, just getting his papers for him." Officer Clark acknowledged that he did not ask for or receive appellant's explicit permission to enter the vehicle.

The trial court admitted as a defense exhibit (and viewed during the hearing) another officer's body-cam video depicting Officer Clark's interaction with appellant. The video, which largely confirms Officer Clark's depiction of events, reflects that, when appellant attempted to enter the truck, Officer Clark asked him

what else he needed from the vehicle. Appellant can be heard saying that he needs to check for some paperwork. Although the audio is not entirely clear, the officer apparently said to appellant, "Move back, move back. If you tell me what you need, I can get it out of the truck for you." Appellant, moving back from the truck, replied that he was just going to get "the papers and everything." Officer Clark then opened the truck door and entered the vehicle while appellant stood by without objecting.

Beyond the brief view of Officer Clark opening the truck door, his entry into the vehicle is not depicted on the video because the other officer's body-cam was focused on appellant at that point. Shortly thereafter, however, someone can be heard saying, "What's this?," to which appellant replied, "I don't know." The officer recording the interaction asked appellant if the truck was his, and appellant replied that it belonged to his brother. Officer Clark re-entered view and detained appellant in handcuffs. Officer Clark held in his hand what appears to be a prescription pill bottle without a label. According to Officer Clark's testimony, when he opened the truck's door, he saw "narcotics in the door," "in plain sight." Thereafter, the officer called dispatch to "log a probable cause search."

At the close of the hearing, the trial court denied the motion to suppress, observing, "There is implied consent. I think we are at a very thin crossroad, a very thin line as to whether it comes in or not because it could be consent because he didn't say anything. . . ." After reviewing the video a second time, the court said, "I'm going to deny the suppression because [the officer] said, 'Move back, I'm going to get what you need,' and so I believe that qualifies, that gets it in, and [appellant] didn't object."

After the trial court denied the motion to suppress, appellant pleaded guilty to the Class A misdemeanor offense of possession of a dangerous drug, and the State

dismissed the other charges. The trial court deferred an adjudication of guilt and placed appellant on community supervision for twelve months.

The trial court signed findings of fact and conclusions of law. Among other findings, the court found the following:

20. According to Officer Clark's body camera,[2] once the Defendant stepped back, Officer Clark asked Defendant what he needed from the vehicle, to which Defendant replied, "papers." Officer Clark told Defendant that he could not let him back into the vehicle. The Defendant continued asking for his papers and other items from the vehicle.

21. Upon the Defendant's insistence to retrieve items from the vehicle, Officer Clark told him that he would get the requested items from the vehicle, to which the Defendant did not object nor protest. Officer Clark testified that based on the Defendant's actions and failure to object, Officer Clark felt he had permission to retrieve said papers on behalf of Defendant.

22. Officer Clark further testified that during the second encounter, Defendant did not state the Officer should not retrieve the "papers" on his behalf nor did he leave Officer Clark or the scene, although he was at liberty to do so. Throughout the second encounter, Defendant continuously engages Officer Clark and seeks to retrieve items from the vehicle.

23. While getting said papers for Defendant, Officer Clark observed in plain-view an orange pill bottle with a white cap without a prescription label. This observation led to the probable cause search of the vehicle, in which additional evidence of narcotics and the handgun was found.

. . .

27. The Court finds that the evidence located by Officer Clark and the Stafford Police Department were not as the result of an illegal search.

The trial court also concluded that:

---

2 The record reflects the body-cam video was from another officer's camera.

7. . . . Officer Clark had reasonable belief that he was acting as an agent of the Defendant in this case.

8. Based on the totality of the facts presented in this case, the Defendant behaviorally gave consent for Officer Clark to intervene and enter the vehicle.

9. The plain-view observation of the evidence was legal.

## Analysis

On appeal, appellant challenges the trial court's denial of his motion to suppress. In appellant's first issue, he contends the trial court abused its discretion by denying his motion based on the plain-view doctrine. In issue two, appellant challenges the denial of his motion to suppress on the basis that Officer Clark was acting as his agent. In his third and fourth issues, he asserts that the trial court abused its discretion in denying his suppression motion based on its findings that, by his behavior, appellant consented to Officer Clark's entry into the vehicle. We address the consent issues first.

## A.      Governing Law

The Fourth Amendment protects individuals against unreasonable searches and seizures. U.S. Const. amend. IV; *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). Generally, warrantless searches and seizures are presumed unreasonable; thus, the State must establish that any search or seizure was justified under an exception to the warrant requirement. *See Kothe v. State*, 152 S.W.3d 54, 59 n.10 (Tex. Crim. App. 2004) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971)). Voluntary consent to search is an established exception to the warrant requirement. *State v. Villareal*, 475 S.W.3d 784, 796 (Tex. Crim. App. 2014) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). The validity of a consent to search is a question of fact to be determined from all the circumstances. *Meekins v. State*, 340 S.W.3d 454, 458 (Tex. Crim. App. 2011). "A

6

person's consent to search can be communicated to law enforcement in a variety of ways, including by words, action, or circumstantial evidence showing implied consent." *Id.* The standard for measuring the scope of consent under the Fourth Amendment is that of "objective" reasonableness—"what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Id.* at 459. Courts review the totality of circumstances from the point of view of the objectively reasonable person, "without regard for the subjective thoughts or intents of either the officer or the citizen." *See id.*

Consent to a warrantless search must be voluntary. *Id.* Consent may not be coerced by explicit or implicit means, by implied threat, or by covert force. *Id.* The voluntariness of a person's consent is also a question of fact that is determined by analyzing all of the circumstances of a particular situation. *Id.* The ultimate question is whether the person's "'will ha[s] been overborne and his capacity for self-determination critically impaired,'" such that his consent to search must have been involuntary. *Id.* (quoting *United States v. Watson*, 423 U.S. 411, 424 (1976)). The trial court may consider numerous factors in the analysis. *Id.* at 460.

## B. Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Lerma v. State*, 543 S.W.3d 184, 189-90 (Tex. Crim. App. 2018). We review the trial court's factual findings for an abuse of discretion but review de novo the trial court's application of the law to the facts. *Id.* Our deferential review of the trial court's factual determinations also applies to the trial court's conclusions regarding mixed questions of law and fact that turn on credibility or demeanor. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012); *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We review mixed questions

of law and fact that do not turn on credibility and demeanor, as well as purely legal questions, de novo. *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011).

At a suppression hearing, the trial court is the sole trier of fact and judge of the credibility and weight afforded witness testimony. *Valtierra*, 310 S.W.3d at 447. When the trial court signs written findings of fact, as here, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports the fact findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). We afford the prevailing party the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013).

Due to the fact-intensive nature of consent issues, we must accept a trial court's finding of voluntary consent on appeal "unless it is clearly erroneous." *Meekins*, 340 S.W.3d at 460.

## C.    The trial court's finding that appellant consented to Officer Clark's entry into his truck is supported by evidence.

In his third and fourth issues, appellant challenges the trial court's findings and conclusions that he consented by his behavior to the vehicle's search and that any consent was voluntary.

Appellant first argues that the law does not recognize that a person can consent to a warrantless search by his behavior. We disagree. As explained above, consent need not be explicit but may be communicated in a variety of indirect ways, including by one's behavior. *E.g.*, *Meekins*, 340 S.W.3d at 458 (citing *Valtierra*, 310 S.W.3d at 451-52; *Johnson v. State*, 226 S.W.3d 439, 440-41 (Tex. Crim. App. 2007); *Gallups v. State*, 151 S.W.3d 196, 201 (Tex. Crim. App. 2004)). Courts have found implied consent in a variety of circumstances. For example, when a car's owner unlocked the vehicle, and the defendant instructed officers how to open the

8

car's hatch and chose which possessions he wanted to take from the car, the defendant implicitly consented to a search of the vehicle. *See Abel v. State*, No. 02-18-00051-CR, 2020 WL 5048078, at *14-17 (Tex. App.—Fort Worth Aug. 27, 2020, no pet.) (mem. op., not designated for publication). A defendant implicitly consented to a search when he moved away from the vehicle's door and to the rear of the vehicle after an officer asked the defendant if he could "search the vehicle, and if so, if [the defendant] could move to the rear of the vehicle." *See Sullivan v. State*, 622 S.W.3d 415, 418-19 (Tex. App.—Waco 2020, pet. ref'd). As well, a defendant who removed his seatbelt and exited his car after an officer asked if he could search the vehicle impliedly consented to a search of the vehicle. *See Tran v. State*, No. 01-18-00623-CR, 2019 WL 5243102, at *1-3 (Tex. App.—Houston [1st Dist.] Oct. 17, 2019, no pet.) (mem. op., not designated for publication). These are but a few examples of decisions recognizing that a person may, by his or her behavior, impliedly consent to a warrantless search of a vehicle.

In the remaining portions of his third and fourth issues, appellant contends that the trial court abused its discretion in finding that he "behaviorally gave consent" because there is no evidence of implied consent. The trial judge's task is to determine precisely what was said and then what was conveyed by the totality of the circumstances. Here, the trial judge determined that appellant re-initiated conversation with Officer Clark after the tow truck arrived; that appellant opened the door to his vehicle; that Officer Clark immediately shut the door and asked appellant to step back, which he did; that Officer Clark closed the vehicle door because appellant's action in opening the door violated safety and police protocol; that once appellant stepped back, Officer Clark asked appellant what he needed from the vehicle, and appellant said "papers"; that Officer Clark told appellant he could not let him back into the vehicle, but appellant continued asking for papers and other

9

items; that Officer Clark said he (Officer Clark) would retrieve the items from the vehicle, and appellant did not object or protest; that appellant did not say that Officer Clark should not retrieve papers from the vehicle; and that "[b]ased on the totality of the facts presented in this case, [appellant] behaviorally gave consent for Officer Clark to intervene and enter the vehicle." We must afford deference to these findings if supported by evidence and may reverse only if clearly erroneous. *See Meekins*, 340 S.W.3d at 460. Having reviewed the record, we note the facts are largely undisputed, and we conclude the court's findings are supported by the testimony of Officer Clark and the body-cam video admitted as a defense exhibit during the hearing.

In *Tran*, Houston Police Department Officer Salina stopped a car after watching it make a wide right turn into the middle lane of a street. *Tran*, 2019 WL 5243102, at *1. Officer Salina made contact with Tran, the driver and only occupant of the car. *Id.* The officer returned to his patrol car and checked Tran's information on his computer. Officer Salina discovered that Tran had three or four prior arrests, but no open warrants. *Id.* The officer returned to Tran's car and asked Tran if he had any weapons or anything illegal in the car, which Tran denied. *Id.* Then, Officer Salina asked if he could check "real quick" to make sure Tran had no weapons or illegal items. *Id.* Tran did not respond orally to the officer, but immediately removed his seatbelt and got out of the car. *Id.* Officer Salina and his partner searched Tran's car and found a bag containing methamphetamine concealed in the driver's door. *Id.* at 2. The trial court determined that Tran non-verbally consented to a search of his vehicle and that the drugs found during the search were lawfully obtained pursuant to Tran's consent. *Id.*

On appeal, the First Court of Appeals concluded that the trial court did not abuse its discretion in denying Tran's motion to suppress:

Based on the totality of the circumstances, the trial court did not err or abuse its discretion in determining that Tran's consent was voluntary, positive, and unequivocal. Salina and Tran were cordial and polite with each other throughout their communications before Salina's request to search the car. The traffic stop was brief, and Salina requested consent to search just over three minutes into the stop. Salina did not make any threats, show of force, or other coercive tactics while they were communicating. While Salina asked Tran several times if he had any weapons or anything illegal, he only requested to search once, and the language of his request—"Would you mind if I check it out real quick just to make sure? Is that cool?"—was not coercive and was not a persistent and protracted show of authority. As the video reflects, Tran immediately complied with the request; he did not object or hesitate. And while Salina did not inform Tran that he could refuse consent, he had no affirmative duty to do so. *See Manzi v. State*, 56 S.W.3d 710, 719 (Tex. App.—Houston [14th Dist.] 2001), *aff'd*, 88 S.W.3d 240 (Tex. Crim. App. 2002); *see also Johnson v. State*, 68 S.W.3d 644, 653 (Tex. Crim. App. 2002) (stating that officer's failure to inform suspect of right to refuse consent does not automatically render consent involuntary).

Though not precedential, we find *Tran* persuasive in this context.

Although consent "is not established by 'showing no more than acquiescence to a claim of lawful authority,'" *Carmouche v. State*, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000) (quoting *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968)), here appellant told the officer what he needed from the truck. Thus, he did more than merely acquiesce to Officer Clark's authority; he affirmatively stated that he needed paperwork from the truck. *See, e.g.*, *Meekins*, 340 S.W.3d at 463-64 (explaining that, depending on circumstances, acquiescence may constitute a finding of consent). After appellant told Officer Clark that he needed paperwork from the vehicle, he did not object when the officer offered to retrieve it and entered the vehicle to do so. A reasonable person would understand that the officer necessarily would have to enter the vehicle to retrieve the papers. Moreover, a reasonable officer in Officer Clark's position would understand from the exchange that he had the citizen's effective

consent to enter the vehicle to retrieve the paperwork in such a situation. *See id.* at 463; *see also Abel*, 2020 WL 5048078, at *14-17; *Sullivan*, 2020 WL 1313442, at *1-2; *Tran*, 2019 WL 543102, at *1-3. There exists sufficient evidence for the trial court to find that appellant's will was not "'overborne and his capacity for self-determination critically impaired'" such that his consent to search must have been involuntary. *See Meekins*, 340 S.W.3d at 459.

Viewing the totality of the circumstances in the light most favorable to the trial court's ruling, we cannot say that the trial court abused its discretion by finding that appellant, by his behavior, consented to Officer Clark's entry into his vehicle. We overrule appellant's third and fourth issues.[3]

### D. Appellant did not preserve his plain-view doctrine complaint.

In his first issue, appellant contends the trial court abused its discretion in denying his motion to suppress on the basis that the evidence seized was in plain view. However, in both his motion to suppress and at the hearing on the motion, appellant argued only that Officer Clark entered his vehicle without reasonable suspicion, probable cause, or consent. Appellant did not challenge application of the plain-view doctrine, assuming that Officer Clark lawfully entered the vehicle. A defendant's assertion of grounds for suppression raised in an appellate court must comport with his articulated grounds for suppression in the trial court, or the grounds are not preserved for appellate review. *See* Tex. R. App. P. 33.1(a); *Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005); *see also Thornburg v. State*, No. 02-14-00453-CR, 2015 WL 4694094, at *8 (Tex. App.—Fort Worth Aug. 6, 2015, pet. ref'd) (mem. op., not designated for publication) ("Because Thornburg's motion to suppress and his argument at the suppression hearing centered on whether there was

---

[3] Our resolution of these issues makes it unnecessary to consider appellant's second issue. *See* Tex. R. App. P. 47.1.

consent to search his apartment, he forfeited his complaint on appeal that the search was not justified by other exceptions to the warrant requirement, such as the plain view doctrine and exigent circumstances."). For this reason, appellant's plain-view argument is not preserved for our review.

Under these circumstances, we overrule appellant's first issue.

## Conclusion

For the above reasons, we affirm the trial court's judgment.

/s/     Kevin Jewell
           Justice

Panel consists of Chief Justice Christopher and Justices Jewell and Poissant (Poissant, J., concurring).

Do Not Publish — Tex. R. App. P. 47.2(b).